CALIFORNIA STATE AUTOMOBILE ASSOCIA-
TION INTER-INSURANCE BUREAU *v.* MALO-
NEY, INSURANCE COMMISSIONER.

No. 310. Argued March 8, 1951.—Decided April 23, 1951.

*Moses Lasky* argued the cause for appellant. With him on the brief were *Maurice E. Harrison* and *Herman Phleger*.

*Harold B. Haas,* Deputy Attorney General of California, argued the cause for appellee. With him on the brief were *Edmund G. Brown,* Attorney General, and *T. A.*

*Westphal, Jr.,* Deputy Attorney General. *Fred N. Howser,* then Attorney General, was with *Mr. Haas* and *Mr. Westphal* on a motion to dismiss or affirm.

*Nathaniel L. Goldstein,* Attorney General, *Wendell P. Brown,* Solicitor General, and *John C. Crary, Jr.,* Assistant Attorney General, filed a brief for the State of New York, as *amicus curiae,* supporting appellee.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellant is an unincorporated association which the California District Court of Appeal analogizes to a mutual insurance corporation. The details of its organization and operation are not important here. It is supervised by the Insurance Commissioner of California, like other insurance companies doing a liability insurance business. It was formed to write automobile insurance to a select group of members at a lower cost than the then prevailing rate. A California law requiring proof of financial responsibility from certain people before issuing them a license to drive a car, provides that a person who does not pay a judgment of $100 or more arising out of an automobile accident has his driver's license suspended, and the suspension can be lifted only by paying the judgment and establishing his ability to pay claims arising from future accidents. That ability to pay may be established by proof that the person is insured, by posting a surety bond, or by deposit of $11,000 in cash. Cal. Vehicle Code, 1943, §§ 410, 414. Another law requires operators of trucks for hire to supply such evidence of financial responsibility before they may get permits to operate trucks. Cal. Stat. 1935, c. 312.

One result of these laws was to make it impossible for a large number of drivers—classified as poor risks by the insurance companies and not possessing enough resources

to get a surety bond or to make the cash deposit—to receive drivers' licenses to operate motor vehicles. Some of these people were poor risks, others were not. Many hardship cases developed among people who were dependent on the use of the highways for a living. There was a proposal that California go into the insurance business and insure these and other risks. The insurance companies countered by adopting a voluntary assigned risk plan under which all automobile insurance companies doing business in California undertook to insure some, though not all, of the groups unable to obtain insurance. This plan, approved by California's Insurance Department, provided for the allocation of applicants to the subscribing insurers in proportion to the amount of automobile insurance written by each in the preceding year.

The voluntary plan did not reach all applicants. Moreover, appellant withdrew from it, causing the other insurers to be reluctant to continue it. Thereupon the legislature enacted the Compulsory Assigned Risk Law. Cal. Stat. 1947, c. 39, p. 525, as amended, c. 1205. It provides that the Insurance Commissioner shall approve "a reasonable plan for the equitable apportionment" among insurers of applicants for automobile insurance "who are in good faith[1] entitled to but are unable to procure such insurance through ordinary methods." Cal. Ins. Code, 1947, § 11620. It is mandatory on all insurers to subscribe to the plan. *Id.* §§ 11625, 11626.

---

[1] Under the plan approved by the Commissioner, Cal. Administrative Code, 1947, Tit. 10, §§ 2400–2498, there are several categories of people excluded. Those excluded cover a wide range. The following are illustrative: those convicted more than once, within three years of application, of manslaughter or negligent homicide resulting from operation of the vehicle; those convicted more than twice, in the same three-year period, of driving while intoxicated or under the influence of liquor; those addicted to use of drugs. § 2431.

The plan approved by the Commissioner was objectionable to appellant, who refused to subscribe to it. The Commissioner, acting pursuant to authority granted him, suspended appellant's permit to transact automobile liability insurance in California. Appellant contested the suspension in the California courts. The District Court of Appeal sustained the act against the claim that it violated the Due Process Clause of the Fourteenth Amendment. 96 Cal. App. 2d 876, 216 P. 2d 882. A petition for hearing was denied by the Supreme Court. The case is here on appeal. 28 U. S. C. § 1257 (2).

Appellant assails the constitutionality of the Act under the Due Process Clause of the Fourteenth Amendment on the following grounds: it commands insurers to enter into contracts and to incur liabilities against their will; it forces on insurers contracts that have abnormal risks and from which financial loss may be expected; it requires appellant to alter its type of business from a cooperative with a select membership to a venture insuring members of the general public.

Appellant in support of its contentions presses *Michigan Commission* v. *Duke,* 266 U. S. 570, and *Frost Trucking Co.* v. *Railroad Comm'n,* 271 U. S. 583, on us. Those cases held that private carriers by motor vehicle could not consistently with Due Process be converted into public carriers by legislative fiat nor be allowed to use the public highways only on condition that they become common carriers. We put those cases to one side. To be sure, appellant is required to insure members of a different group than the select one it voluntarily undertook to serve. But there are important restrictions on the financial commitments incident to the broadened undertaking. We were advised on the argument that the premiums chargeable can be commensurate with the greater risks of the new business. Confiscation is therefore not a factor in the case. Moreover, the California statute provides

for an equitable apportionment of the assigned risks among all insurers, not that appellant serve all comers. Furthermore, uninsurable risks are eliminated from the plan; and policies issued may provide limited coverage of $5,000–$10,000.

The case in its broadest reach is one in which the state requires in the public interest each member of a business to assume a *pro rata* share of a burden which modern conditions have made incident to the business. It is therefore not unlike *Noble State Bank* v. *Haskell,* 219 U. S. 104, which sustained a state law assessing each state bank for the creation of a depositors' guaranty fund. What was there said about the police power—that it "extends to all the great public needs" and may be utilized in aid of what the legislative judgment deems necessary to the public welfare (p. 111)—is peculiarly apt when the business of insurance is involved—a business to which the government has long had a "special relation." [2]  See *Os-*

---

[2] State regulation of the insurance business has been upheld in a wide variety of circumstances against the claim that the law violated the Due Process Clause of the Fourteenth Amendment: See *Hooper* v. *California,* 155 U. S. 648, requirement of license and bond; *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, fixing recovery at insured value; *Nutting* v. *Massachusetts,* 183 U. S. 553, license and deposit of security; *Carroll* v. *Greenwich Insurance Co.,* 199 U. S. 401, prohibition of combinations or agreements between companies; *Northwestern Life Ins. Co.* v. *Riggs,* 203 U. S. 243, limitation of defenses; *Whitfield* v. *Aetna Life Ins. Co.,* 205 U. S. 489, same; *German Alliance Ins. Co.* v. *Hale,* 219 U. S. 307, statutory penalty against rate-fixing combinations; *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, rate regulations; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, workmen's compensation act; *La Tourette* v. *McMaster,* 248 U. S. 465, licensing of brokers; *National Union Fire Ins. Co.* v. *Wanberg,* 260 U. S. 71, limiting the time for rejection of hail insurance policies; *Merchants Mutual Automobile Ins. Co.* v. *Smart,* 267 U. S. 126, regulation of liability under indemnity policies; *Aetna Insurance Co.* v. *Hyde,* 275 U. S. 440, rate regulations; *O'Gorman & Young* v. *Hartford Fire Ins. Co.,* 282 U. S. 251, regulation of agents' commissions;

*born* v. *Ozlin,* 310 U. S. 53, 65, 66.   Here, as in the banking field, the power of the state is broad enough to take over the whole business, leaving no part for private enterprise.   *Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *Osborn* v. *Ozlin, supra,* p. 66.   The state may therefore hold its hand on condition that local needs be serviced by the business.   *Osborn* v. *Ozlin, supra,* was such a case; it sustained on that theory Virginia's law requiring Virginia residents to have a share in writing casualty and surety risks in Virginia.   The principle of *Osborn* v. *Ozlin* now presses for recognition in a situation as acute as any with which the states have had to deal.   Highway accidents with their train of property and personal injuries are notoriously important problems in every community.   Clearing the highways of irresponsible drivers, devising ways and means for making sure that compensation is awarded the innocent victims, and yet managing a scheme which leaves the highways open for the livelihood of the deserving are problems that have taxed the ingenuity of law makers and administrators.

Whether California's program is wise or unwise is not our concern.   See *Olsen* v. *Nebraska,* 313 U. S. 236; *Lincoln Union* v. *Northwestern Co.,* 335 U. S. 525.   The problem is a local one on which views will vary.   We cannot say California went beyond permissible limits when it made the liability insurance business accept insurable risks which circumstances barred from insurance

---

*Hardware Dealers Mutual Fire Ins. Co.* v. *Glidden Co.,* 284 U. S. 151, prescribing compulsory arbitration provisions; *Life & Casualty Ins. Co.* v. *McCray,* 291 U. S. 566, additional recovery for failure to pay on demand; *Osborn* v. *Ozlin,* 310 U. S. 53, requiring participation by resident agents; *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313, regulation of reciprocal insurance associations; *State Farm Mutual Automobile Ins. Co.* v. *Duel,* 324 U. S. 154, reserve requirements; *Robertson* v. *California,* 328 U. S. 440, licensing of brokers; *Daniel* v. *Family Security Life Ins. Co.,* 336 U. S. 220, separation of life insurance and undertaking businesses.

and hence from the highways. Appellant's business may of course be less prosperous as a result of the regulation. That diminution in value, however, has never mounted to the dignity of a taking in the constitutional sense. See *Noble State Bank* v. *Haskell, supra,* p. 110; *Block* v. *Hirsh,* 256 U. S. 135, 155.

*Affirmed.*

MR. JUSTICE BLACK would dismiss the appeal on the ground that the constitutional questions are frivolous.