Bernita MATTHEWS, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 3131.

United States District Court
E. D. Virginia,
Norfolk Division.
April 28, 1961.

Manning, Singleton, and E. H. Lawrence Motors, Inc., alleging damages in the sum of $10,000. The last named defendant filed an affidavit denying ownership, agency, operation and control and, after due investigation by counsel for plaintiff, the action against the corporation was dismissed without prejudice. Neither Manning nor Singleton made any appearance in the state court proceeding, and on November 3, 1959, a jury, after hearing evidence as to liability and damages, returned a verdict in the sum of $10,000 in favor of said plaintiff, and the Court thereupon entered judgment on said verdict, together with costs aggregating $20.50 and interest from November 3, 1959.

The automobile driven by Singleton and owned by Manning was uninsured. Both defendants were apparently members of the United States Navy.

It is conceded that, by virtue of the liability insurance policy issued by defendant in the name of Albert L. Matthews, plaintiff was insured under the terms of the policy at the time of the accident. After the action in the state court had matured and was set for trial, plaintiff's attorney advised defendant by letter dated September 21, 1959, that suit had been instituted; that a claim was being made under the uninsured motorist provision of the policy issued to Albert L. Matthews; and that the case was set for trial on November 3, 1959. A copy of plaintiff's motion for judgment was enclosed in said letter and counsel for plaintiff indicated a willingness to furnish any additional information requested. The defendant, by letter dated September 25, 1959, returned the motion for judgment stating:

"As you know, the statute under which you seek to recover, requires you to effect service of process upon the resident agent of Mr. Matthews' insurance company."

The defendant, in said letter, enclosed a form denominated "Notice of Claim under the Uninsured Motorist Coverage" for execution by plaintiff, to be returned to defendant. The letter also stated that

Bangel, Bangel & Bangel, L. David Lindauer, Portsmouth, Va., for plaintiff.

Williams, Cocke, Worrell & Kelly, Lawson Worrell, Jr., and Jack E. Greer, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

On March 21, 1959, plaintiff was the occupant of an automobile owned by her husband, Albert L. Matthews, which motor vehicle was insured by the defendant, Allstate Insurance Company, when the car occupied by plaintiff was involved in an accident with an automobile driven by Richard Singleton and in which the owner, L. E. Manning, was riding at the time.

On April 6, 1959, plaintiff instituted an action in the Circuit Court of the City of Portsmouth, Virginia, against

defendant's representative would call upon counsel for plaintiff. In response to this letter, counsel for plaintiff caused a copy of the process to be served upon defendant's resident agent, and likewise forwarded the completed form to defendant by letter dated September 28, 1959. Service of a copy of the motion for judgment upon the resident agent was effected on September 29, 1959.

Counsel for plaintiff invited the defendant to participate in the defense of the state court action. He had one or more discussions with defendant's claims representative prior to the trial. The defendant at no time prior to trial made any statement to the effect that it had no right to appear and defend the state court proceeding. No attempt was ever made to appear or otherwise file any responsive pleading in the action. There is evidence to the effect that defendant, on October 29, 1959—five days prior to trial—contacted Singleton, one of the named defendants in the state court action, in an effort to secure written authorization to appear in his behalf, but Singleton thereafter failed to contact defendant and nothing further was done. Manning had apparently gone to sea and was unavailable. No request was ever made by defendant to continue the case in the state court to permit further time for the purpose of attempting to secure any authorization from either Manning or Singleton. Moreover, defendant never notified counsel for plaintiff, prior to the entry of judgment, as to its inability to obtain the authorization to defend; nor did defendant ever advise plaintiff's attorney that no appearance would be made at the trial.

The judgment not having been paid, and an execution having been issued with a return of "no effects," plaintiff's attorney, by letter dated December 10, 1959, forwarded an abstract of the judgment to defendant, requesting draft in payment. In response, defendant's claims representative telephoned the attorney stating: "Well, you don't mind waiting until January to get your payment. You will get your check in January." Plaintiff's counsel readily agreed. Not having received payment on January 8, 1960, plaintiff's counsel wrote defendant as follows:

"Re: Bernita Matthews v. L. E. Manning, et als
"Gentlemen:
"May I have a check to cover the judgment in the above styled case for $10,000.00, with interest from the 3rd day of November, 1959, and $20.50 costs."

Following the receipt of this letter the defendant, for the first time, advanced the contention that it was not liable under the terms of the policy to the extent of the final judgment rendered against Manning and Singleton by the Circuit Court of the City of Portsmouth. Defendant now advances the rather novel argument that, upon the pleadings filed, plaintiff should be required in this pending action to prove negligence and damages on the part of the uninsured motorist.

It is conceded that Albert L. Matthews paid a premium of $6 for the uninsured motorist protection under the policy issued by defendant. This premium was, of course, independent of premiums paid for other coverages which are not in controversy. It is also admitted that, immediately following the accident, the defendant was notified of same and made its required report on form SR–21.

This action was subsequently filed in this court on January 18, 1960, in which it is alleged that defendant is liable to plaintiff for the amount of the state court judgment and costs in the sum of $10,020.50, with interest from November 3, 1959. Defendant filed a motion to dismiss contending that its insurance policy liability was limited to $10,000 and, therefore, the jurisdictional requirements had not been met under the diversity statute. Treating the motion to dismiss as a motion for summary judgment under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the Court denied same under the authority of Wilkerson v. Maryland Cas--

ualty Co., D.C., 119 F.Supp. 383, affirmed 4 Cir., 210 F.2d 245. As pointed out in Wilkerson, the insurance contract was prepared by the insurer and must be construed against the insurance company. When not in conflict with the laws of Virginia, it was within the province of the insurance company to specify that interest would not be payable on any claim against the policy under the Virginia uninsured motorist law. Under the endorsement in question, the limit of liability specifically applies to "damages" followed by a general definition of this word. We must, therefore, turn to the other applicable terms of the policy wherein it is provided under "Supplementary Payments" that the insurance company will pay "all interest on the entire amount of any judgment therein." It seems clear that the amount of interest recovered under a state court action is to be included in determining the jurisdictional amount for the purpose of diversity of citizenship actions.

Defendant thereupon filed a motion to stay the proceedings to permit it to file a petition for a declaratory judgment in a Virginia state court of competent jurisdiction for the purpose of obtaining an interpretation of § 38.1–381, Code of Virginia, 1950, as said statute existed prior to an amendment effective April 27, 1959. The matter was argued and, while no formal order appears to have been entered, the motion was denied. The reasons for such action are (1) the defendant had ample time during the pendency of the state court action to request a declaratory judgment, and (2) while a constitutional question is raised by defendant, the statute in question was amended effective April 27, 1959, and there is little likelihood that the question will ever again arise. There was no compelling reason to apply the doctrine of abstention.

Plaintiff filed a motion for summary judgment, but the court concluded to hear all of the evidence in the case rather than decide the matter on the pleadings and affidavits.

While there is considerable merit to plaintiff's contention that defendant waived any rights it may have had prior to the entry of the state court judgment, the case need not be determined on this issue alone. A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights, but silence, when there is a duty to speak, may result in the waiver of one's rights. Creteau v. Phoenix Assurance Co. of New York, Va., 119 S.E.2d 336. The instant proceeding would appear to establish a course of conduct tending to lull plaintiff's attorney into a sense of security with a corresponding duty on defendant's part to speak. It may be argued that plaintiff and her attorney were powerless to do anything in the premises. While it is true that the amendment to § 38.1–381 of the Code of Virginia, 1950, did not become effective until April 27, 1959, and said amendment further provides that "this subsection shall not apply to any cause of action arising prior to the effective date of this amendment," this does not suggest that the defendant, through the efforts of its able counsel, could not have appeared in defense of the state court action. Had counsel for plaintiff, who formally advised defendant as to plaintiff's reliance upon the uninsured motorist provision of the policy, been cognizant of the fact that the insurance company did not intend to defend the state court action, he could have requested a pre-trial conference which may properly have resolved the question. Manifestly, the conduct of the defendant was inconsistent as, until the receipt of the letter of January 8, 1960, there can be no doubt of the fact that the insurance company took the position that it would be required to pay the judgment.

There is a further reason why the defendant should now be held to have waived its rights or, in the alternative, to find that defendant could have properly appeared and defended the state court action. There is nothing in this

record to indicate that plaintiff, or her attorney, was aware of the fact that Manning and Singleton were in the active military service of the United States Navy. This information was known to defendant's claims representative upon the occasion of his visit to Singleton's home, where he interviewed Singleton and his wife, on October 29, 1959. No explanation is forthcoming as to why the defendant did not interview either Singleton or Manning prior to October 29 when, in fact, defendant was served with process on September 29, and the process reflects the home addresses of both parties. Had the plaintiff, or her attorney, been advised of the military status of the parties, it would have been a relatively simple matter to arrange for the appointment of an attorney under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, 50 U.S.C.A.Appendix, § 520. Presumably no affidavit was filed in the state court action, and as a result of defendant's failure to speak or in any manner endeavor to appear in the state proceeding, plaintiff has a *voidable* judgment against Manning and Singleton, which is subject to attack *only* by the serviceman seeking relief. Under the facts of this case, if the military status of Manning and Singleton had been brought to the attention of the state court, an attorney would have been appointed to represent the parties and to protect their interests. There is little doubt but that the state court, with knowledge of the interest of the insurance company, would have appointed defendant's counsel as the attorney for Manning and Singleton. However, the silence of the insurance company precluded even a suggestion from plaintiff's counsel that an attorney be appointed for Manning and Singleton, despite the fact that the defendant had been invited to appear and participate. Thus it follows that there was a waiver and, in addition, means existed for the defendant to enter the state court proceeding without the specific authorization of the servicemen.

In Creteau v. Phoenix Assurance Co. of New York, supra, the Supreme Court of Appeals of Virginia has held that, as to causes of action arising subsequent to April 27, 1959, the mandatory provisions of § 38.1–381(e) (1) of the Code of Virginia, 1950, are applicable, and that if an insured intends to rely on the coverage provided by the uninsured motorist endorsement, it is incumbent upon the insured to serve a copy of the process upon the insurance company issuing the policy "as though such insurance company were a party defendant."[1] The Supreme Court of Appeals pointed out that a copy of the process *must* be served upon the insurance company before it may be held liable under the uninsured motorist act. The opinion goes further and states that the language employed is mandatory and establishes a condition precedent to the benefits of the statute unless waived by the insurance company.

Subsection (e) (1) of § 38.1–381 of the Code of Virginia, 1950, was not in existence when plaintiff's cause of action against Manning and Singleton arose on March 21, 1959. The statute was completely silent on the procedure avail-

---

1. Section 38.1–381(e) (1) of the Code of Virginia, 1950, as amended effective April 27, 1959, reads as follows:

"Any insured intending to rely on the coverage required by paragraph (b) of this section shall, if any action is instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this paragraph shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding.

"This subsection shall not apply to any cause of action arising prior to the effective date of this amendment."

able to an insurance company to defend a claim under the uninsured motorist endorsement provision of the policy. It did not say that the insurance company was prohibited from appearing in behalf of the alleged negligent uninsured motorist, nor did the statute spell out the appropriate procedure to be followed in such a case. As was said in Creteau, the amendment is procedural and "it does not deprive plaintiff of any rights under the liability insurance policy."

We turn, then, to the policy. For what protection did Albert L. Matthews pay his annual premium of $6? Was it only for situations in which the uninsured motorist approached plaintiff's insurance company and requested that the case be defended by the company? We think not. Under clause 4 of the "Conditions" entitled "Notice of Legal Action," it is said:

> "If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative."

It may be argued that since suit was instituted on April 6, 1959, and process was not served until September 29, 1959, this was not "Immediately" as the policy required. Obviously this portion of the condition was waived and, indeed, the point is not stressed by the defendant.

This is the only pertinent provision of the endorsement attached to, and made a part of, the policy of insurance. Since a copy of the process was served upon the defendant, the plaintiff complied with the letter of the contract. It is certainly not the fault of the plaintiff that the statute omitted the procedural steps affirmatively permitting the insur-

ance company to appear and defend. The policy does not call for any condition whereby the uninsured motorist must cooperate with the insurance company with respect to appearances and the defense of the action. These are provisions which presumably were overlooked by the various insurance companies in drafting contracts under the 1958 Act enacted by the General Assembly of Virginia. The law compels a construction of the contract adverse to the interest of the insurance company.

The policy, but not the endorsement, contains a provision for arbitration of claims by the insured under the uninsured motorist clause, but the Virginia statute, § 38.1–381(g), nullifies the effectiveness of the arbitration provisions of the policy. In any event, neither party ever demanded arbitration. The same subsection, § 38.1–381(g), does contain the following language: *"nor may anything be required of the insured except the establishment of legal liability."* These words certainly tend to place the burden upon the insurance company to devise the means whereby it could appear and defend the action against the uninsured motorist. Since the requirement of establishing legal liability of the uninsured motorist has been fully met by the plaintiff herein, the defendant's liability automatically attaches to the extent of the limitations of the policy.

Had the defendant appropriately raised the question in the state court, it is not unlikely that, under the terms of the policy endorsement, the insurance company would have been permitted to intervene. Section 8–96 prohibits the joinder of the insurance company as a party defendant, but this statute is undoubtedly for the benefit of the insurer and does not foreclose the right to be added as a party defendant at its request where it is clear that the insurer has a definite interest in the action. That such permissive joinder is proper is evidenced by the fact that the insurance company in the present case now urges that plain-

tiff should be required to prove liability for the tort and damages in this action predicated upon the insurance contract and statute.

It is inconceivable to this Court that an insurance company, desirous of affording protection required by the terms of the policy, would not be granted leave by the state court to intervene as a party defendant, or to otherwise have had its own counsel appointed to defend the servicemen. Undoubtedly, the insurance company would like to avoid being named as a party defendant but, if all other avenues of appearance and defense are closed, the right to intervene would apparently exist. The least that can be said is that an effort would be in order.

■ Assuming arguendo that the insurance company had no rights in the state court action, that it could not appear and defend in the name of Manning or Singleton, and that it could not appear and defend in its own name, there is nothing in the insuring agreement to prevent the company from agreeing to pay damages without the right to defend the uninsured motorist. The pertinent provision of the policy is that the insurance company agrees:

> "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of: (a) bodily injury * * * caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile."

This is what the insurance company agreed to do—this is what the insured paid his premium for. The words "legally entitled" do not contemplate an appearance and defense of the action. The state court action was heard by a court and jury, both as to liability and damages. The legal entitlement to damages has been established.[2]

■ From the above it will be noted that the "Insuring Agreements" under the uninsured motorist endorsement differ substantially from the provisions of the standard policy without such endorsement or any provision for uninsured motorists. By the standard policy the company agrees "to pay *on behalf of the insured*," whereas the uninsured motorist endorsement is an obligation to pay "the insured." True, the obligation to pay is limited to damages which the insured is "legally entitled to recover," and such would ordinarily presuppose the entry of a judgment against the uninsured motorist. Presumably there is no obligation to defend the uninsured motorist under either the standard policy or the Virginia uninsured motorist endorsement. It is only the insured motorist whom the company specifically agrees to defend in an action instituted against the insured. When the legislature amended the Act, effective April 27, 1959, it provided that the uninsured motorist had an absolute right to employ counsel of his own choice, with the right to take any action in his own interest in connection with such proceeding against the uninsured motorist. The amendment merely granted the insurance company a *statutory* right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle, or in the name of the company— discretionary rights that probably existed prior to April 27, 1959, in any event. Conflicts may arise in the future as to the control of litigation and trial tactics in cases involving uninsured motorists where different attorneys are representing the company and the uninsured motorist. In such instance the statute suggests that counsel for the uninsured motorist will control the litigation, with the right of the insurance company to appear in its own name if it so desires.

2. The Court is aware of the fact that a contrary view is expressed by Collins Denny, III, a student at the University of Virginia Law School, in his article appearing in 47 Va.L.Rev. 145, at p. 170, published in January, 1961.

■ What has been said in the foregoing two paragraphs effectively disposes of defendant's contention that it cannot be constitutionally bound by a judgment obtained in a proceeding to which it was not, and could not be, a party. The premium rate charged for the uninsured motorist endorsement was not confiscatory, but was commensurate with the risk assumed by insurance carriers in the absence of a given statutory opportunity to appear and defend actions against uninsured motorists who fail, or otherwise refuse, to permit the company to defend in the name of the uninsured motorist.[3] There is no denial of due process of law here presented. If the insurance company wishes to accept such a risk for a stated consideration, it merely agrees to pay such damages as are determined between the insured and the uninsured motorist. The fact that the General Assembly of Virginia added subsection (e) (1), effective April 27, 1959, does not suggest that the insurance companies were collecting an annual premium without providing any coverage prior to the aforesaid date. While defendant argues that the legislature recognized that the amendment was a matter of substantive law affecting the basic rights of the parties, and not merely a matter of procedure or form, the Supreme Court of Appeals of Virginia has held to the contrary in Creteau v. Phoenix Assurance Co. of New York, supra, when it said:

"The amendment is procedural and it does not deprive plaintiff of any rights under the liability insurance policy." [119 S.E.2d 340.]

■ The fact that Virginia has made mandatory the uninsured motorist endorsement as to any policy or contract of bodily injury liability insurance, or of property damage liability insurance, issued or delivered in Virginia is even more cogent reason for holding that the insurance company may be constitutionally bound by a judgment obtained in a proceeding to which it was not, and even perhaps could not be, a party. Section 38.1–381(b) imposes an obligation to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle within certain limits. The insurance company is not required to do business in Virginia, but when it does elect to issue or deliver policies in Virginia, it assumes the burdens. The burden imposed in this case is certainly no greater, if as great, as the assigned risk plan which requires insurance companies to insure, to a limited amount, the "poor risk" classification. Confiscation is not a factor in either instance. California State Auto. Ass'n v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788. Cf. Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074. It should also be noted that the $15 fee required of any uninsured motorist prior to obtaining a state license for a vehicle is a part of a fund subject to the control of the State Corporation Commission which, in turn, authorizes annual payments to insurers doing business in Virginia in the proportion to their premium income from the uninsured motorist endorsement.

To uphold defendant's theory here advanced would be tantamount to rewarding the insurance company from two sources, without extending coverage in any case unless the uninsured motorist specifically authorized an appearance and defense in his name. It would open the door to fraudulent acts on the part of claims representatives—a charge that is not intimated in this case—who may be permitted to state that authorization to appear and defend was never granted. Observing that the original act gave the insurance company the right to file pleadings and take other action allowable by law in the "John Doe" cases where the uninsured motorist is unknown, and considering the purpose of the legislation, the intent of the legislature, while perhaps not clear, would point to the posi-

---

**3.** See Opinion of Attorney General of Virginia dated March 25, 1959, in letter addressed to Honorable Edward E. Lane, Member of the House of Delegates.

tive obligation to pay irrespective of procedural defects. That the contended defect was cured the following year does not affect the public interest as reflected by the necessity of meeting a public need.[4]

For the reasons herein stated, the plaintiff is entitled to judgment against the defendant for the amount stated in the complaint.

Present judgment order on notice.

---

4. For some comments as to problems likely to arise under the Virginia Uninsured Motorist Act, see 16 Wash. & Lee L.Rev. 134.