INSURERS' ACTION COUNCIL, INC., a Nebraska Corporation, et al., Plaintiffs,

v.

Berton HEATON, Commissioner of Insurance, et al., Defendants,

and

United Cerebral Palsy et al., Intervenors.

No. Civ–3–76–440.

United States District Court, D. Minnesota, Third Division.

Dec. 23, 1976.

Frank Claybourne, Joseph R. Kernan, Jr., and Robert J. Schmit, Doherty, Rumble & Butler, St. Paul, Minn., for plaintiffs.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Stephen F. Befort, Kent G. Harbison, William R. Howard, and Richard D. Lockridge, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendants Berton Heaton and Minnesota Department of Commerce, Ins. Division.

John F. Stone and David B. Morse, Thompson, Hessian, Fletcher, McKasy, & Soderberg, Minneapolis, Minn., for defendant Minnesota Comprehensive Health Association.

Rebecca A. Knittle and Patricia A. Suita, Legal Advocacy for the Developmentally Disabled of Minnesota, Minneapolis, Minn., attorneys for defendants in intervention United Cerebral Palsy, Minnesota Epilepsy League, Minnesota Association for Retarded Citizens, Michael L. Berde and Carol T. Berde.

Frank Allen Hester, Legal Assistance of Ramsey County, Inc., St. Paul, Minn., for amici curiae Senior Citizens Legislative

Council of Greater St. Paul, Senior Citizens Coalition of Greater St. Paul, Inc. and Metropolitan Senior Federation, Inc.

Michael Milgrom, Minneapolis, Minn., for amicus curiae Minnesota Public Interest Research Group.

John F. Market, St. Paul, Minn., for amicus curiae Minnesota Catholic Conference.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This action for declaratory and injunctive relief, which is presented on plaintiffs' motion for a preliminary injunction, is a challenge to the constitutionality of the recently enacted Minnesota Comprehensive Health Insurance Act of 1976, Minn.Laws 1976, ch. 296.

Plaintiffs are several insurance companies and a non-profit corporation composed of several other insurers, all of which write or have written accident and health insurance in Minnesota. Such activities have subjected them to regulation by the Act. Defendants are the Minnesota Commissioner of Insurance, the individual charged with administering the Act, the Insurance Division of the Minnesota Department of Commerce, and the Minnesota Comprehensive Health Association, an association created by the Act and composed of all commercial insurers, fraternals, self-insurers, and health maintenance organizations who desire to write accident and health insurance in Minnesota. In addition, several organizations whose members are potential beneficiaries of the Act have been permitted to intervene or participate as amici curiae.

The Act has three basic areas of operation. First, it requires that every health and accident insurer shall offer to Minnesota residents qualified policies or unqualified policies containing a specified amount of major medical coverage. Qualified policies are those which provide certain statutorily mandated benefits or the actuarial equivalent of those benefits. Second, employers who offer health care plans to their employees must make available to them a certain type of qualified plan. Finally, the Act creates the Comprehensive Health Association and charges it with operating a comprehensive health insurance plan designed to offer policies to individuals who are unable to obtain health and accident insurance through normal channels. The Association is also available to reinsure qualified policies issued by individual carriers.

The statute was passed after extensive legislative investigation showed that some 400,000 Minnesotans presently are not covered by any form of health insurance. Of this number, some 200,000 are uninsurable because of a pre-existing medical disability. Without delving at length into the various irreparable injuries alleged by all parties to this litigation, the court notes that any delay in the operation of this statute will work a corresponding delay in medical insurance coverage for these people. The court does not feel the need to explore the equities any further since it concludes that plaintiffs have failed to satisfy the one non-injury oriented requirement for securing a preliminary injunction. They have failed to demonstrate a substantial probability of success on the merits.

### I. *Substantive Due Process*

Plaintiffs' first argument based on the due process clause is that the Act is an unreasonable and arbitrary exercise of the state's recognized power to regulate the business of insurance. Although this argument seems to invoke the antiquated if not moribund theory of "substantive due process," it appears to have continuing validity in this area, at least on the state level. *Aetna Casualty and Surety Co. v. Commissioner*, 358 Mass. 272, 263 N.E.2d 698 (1970) and *Hartford Accident and Indemnity Co. v. Ingram*, 290 N.C. 457, 226 S.E.2d 498 (1976). These cases respectively illustrate the two unreasonable elements which plaintiffs find in the Act—confiscation and conscription into a new business. Plaintiffs allege that confiscation will occur from the operation of the state plan. The conscrip-

924

tion argument is used to attack both aspects of the statute. The court will assume only for the purpose of discussion that some aspects of the substantive due process doctrine remain viable and that the elements of confiscation and conscription delineate its reach regarding state regulation of insurance.

Plaintiffs seemingly attack a few other aspects of the statute under the substantive due process rubric such as the Act's requirement that *all* insurers offer qualified plans. Plaintiffs claim that this requirement is not rationally related to the purpose of the statute since some qualified plans are presently being offered. They claim that requiring all insurers to offer such policies is superfluous to the Act's goal of providing minimum health care benefits. This superfluous requirement is allegedly irrational since it will possibly drive some insurers out of the state. What this amounts to is asking the court to substitute its economic and social judgment for that of the legislature. But I can't do that. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

Plaintiffs have repeatedly used the term confiscation without precisely defining what they mean. Does confiscation occur when the right to do business is conditioned upon incurring a net loss on all operations in the state or only upon suffering a loss in one area of business which can be offset by gains elsewhere? Although they have not adequately defined the term, plaintiffs have been very clear in pointing to the events which will allegedly have a confiscatory effect. For the first year of operation, the premium for insurance offered under the state plan will be the average of the premiums charged by the five largest insurers with the largest number of persons covered by qualified plans. Plaintiffs claim that this rate will necessarily result in a loss to the state plan, which loss will be passed on to the member insurers. Either this will cause confiscation or the inability of the insurers to recoup this loss in future years will have that effect. Plaintiffs do not

seriously contend that confiscation will result in the subsequent years of the plan's operation since the statute provides that the state plan premium in those years shall be "self-supporting."

There are two answers to plaintiffs' contention. First, it is not at all clear that a loss will result in the first year of operation. For example, persons insured by the state plan will be able to collect only for expenses caused by pre-existing conditions which are incurred in the last six months of the first year. Thus, they will receive half the projected benefits but will be obligated to pay the full premium. Also, because of transactions costs which are built into the normal commercial premium but are not included in the state premium, a larger fraction of the state plan premium will be available to pay claims. Second, even if a loss occurs, it appears that insurers can offset it by raising premiums on individual policies sold to Minnesota residents. Although the court had some initial reservations about the ability of insurers to do this since the Commissioner of Insurance has the power under Minn.Stat. § 62A.02(3) (1974) to disapprove premiums which are unreasonable in relation to the benefits provided *in the policy*, both parties agreed at oral argument that such an offset could be made. Therefore, it appears that plaintiff's claim of loss with no possibility of recoupment is speculative and not sufficient to trigger an injunction at this stage of the proceedings. If a loss in fact occurs and recoupment is prohibited, plaintiffs then may have a remedy. However, the court re-emphasizes that in order to prove such a claim, plaintiffs must first define what they mean by confiscation and demonstrate that confiscation of this nature made through the exercise of the state's police power is redressable under the due process clause.

As previously noted, plaintiffs also contend that the Act is unreasonable since it obligates unwilling insurers to enter a new line of business for which they are insufficiently prepared. Some of the plaintiffs are characterized as small insurers who

write low-limit health and accident policies with benefits which do not approach the statutorily mandated coverages. Plaintiffs claim that he obligation to offer qualified policies, either directly to individuals or indirectly through participation in the state plan, unconstitutionally forces them into the entirely new business of providing broad-benefit, high-limit forms of insurance. Plaintiffs rely on *Hartford Accident and Indemnity Co. v. Ingram, supra,* in support of this position. In that case, the Supreme Court of North Carolina invalidated a statute which required all general liability insurers to participate in a state-run medical malpractice insurance pool as a condition of doing business in the state. The court's rationale was that the right to do business cannot be conditioned on the obligation to enter into an entirely new line of business.

This case must be compared with *California State Automobile Asso. Inter-Insurance Bureau v. Maloney,* 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951) in which the Court denied a challenge by an automobile insurer to a statute requiring it to participate in a state automobile insurance pool which offered insurance to persons who were unable to obtain it through commercial channels. One of the insurer's claims was that the statute unconstitutionally forced it to expand its former operation of issuing policies to selected individuals on a limited basis to that of insuring the public at large. As both parties admit, the effect of the statute in question lies somewhere between these two extremes. The court feels that the present record supports the conclusion that the requirements imposed by the statute are more in the nature of an extension of existing business of the sort approved in *Maloney.* Although new benefits are to be offered, plaintiffs will be able to charge a compensable rate. Moreover, the calculation of this rate will involve an analysis of the same generic sort of accident and health contingencies with which plaintiffs have previously dealt. Therefore, the court holds that plaintiffs have not shown a substantial probability that the Act impermissibly re-

quires them to enter into a new line of business.

## II. *Vagueness*

Plaintiffs' second due process argument is that the statute contains numerous provisions which are so vague that reasonable men will necessarily differ as to their meaning and consequently will be unable to ascertain the standard of conduct required. First, it should be emphasized that legislation is necessarily an *ad hoc* process and a certain degree of uncertainty is present in almost every statute. This is the underlying principle espoused by Mr. Justice Frankfurter's dissent in *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1353, 1 L.Ed.2d 1485 (1957), in an equal protection context and seems to be the present approach of the Supreme Court, *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Such uncertainties do not justify voiding a non-penal statute on its face. Rather, clarification should be reserved for a case presenting direct claims of injury which are or not legally redressable depending upon the interpretation of the uncertain provision. Furthermore, where a statute contemplates an ongoing relationship between industry and the state, elucidation of seemingly vague provisions will necessarily result, thereby obviating the need for judicial intervention. Facial vagueness sufficient to violate due process only results when no reasonable interpretation consistent with the purpose of the statute can be advanced. The court feels that none of the provisions attacked by plaintiffs possess that degree of uncertainty. Several provisions have been clarified since the filing of the complaint. For example, the term "actuarial equivalent." Several of the interpretations posed by plaintiffs are patently unreasonable. For example, plaintiffs admit that the inclusion of independent contractors in the definition of employee would be a radical departure from prior law. Finally, defendants have proposed reasonable interpretations of the remaining disputed portions. The court finds that the Act is not so vague as to amount to a denial of due process.

### III. *Equal Protection*

 Plaintiffs argue that the exclusion of so-called indemnity policies from the operation of the Act when issued by fraternal insurers is violative of the equal protection clause. Plaintiffs contend that there is no rational basis for excluding such policies since identical policies issued by commercial insurers are included. As defendants point out, the modern test for analyzing non-suspect classifications which do not interfere with fundamental rights is whether the classification is totally without a rational basis. *City of New Orleans v. Dukes, supra.* Fraternal insurers have always been treated differently than commercial insurers in Minnesota. They are regulated under a separate statute and may not engage in business for profit. In enacting a new statute, the legislature might well have concluded that it was unnecessary at that time and without benefit of experience under the statute to preclude fraternals, these historically unique associations, from issuing indemnity policies to their members without statutory compliance. It is well settled that the legislature may implement programs piecemeal and delay total elimination of a perceived evil until a future date. *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Thus, the court finds that plaintiffs have not shown a substantial probability that the statutory classification denies plaintiffs equal protection of the laws.

### IV. *Preemption by ERISA*

 In their brief, plaintiffs argue that the portions of the Act relating to an employer's obligation to offer specified forms of group insurance to his employees is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (Supp. V, 1975). Specifically, plaintiffs claim that since health and accident insurance is defined as an "employee welfare benefit plan," 29 U.S.C. § 1002(1)(A), (Supp. V, 1975), and "employee welfare benefit plan" is included in the term "employee benefit plan," 29 U.S.C. § 1002(3) (Supp. V, 1975), the Act is preempted by 29 U.S.C. § 1144(a) (Supp. V,

1975) which provides that all state laws relating to employee benefit plans are superseded by ERISA. This argument has superficial appeal. However, closer examination reveals that plaintiffs have not shown a substantial probability that it has merit. In the first place, 29 U.S.C. § 1144(b)(2)(A) (Supp. V, 1975) provides that with a very narrow exception, ERISA should not be construed to relieve any person from any state law regulating insurance, banking, or securities. Thus, the conflict between the challenged state insurance law and ERISA has to be very clear in order to trigger the preemption provision. The only substantive parts of ERISA which relate to health and accident insurance are the reporting and disclosure provisions. These requirements have nothing to do with the substance of the insurance plans which employers must offer their employees. Additionally, 29 U.S.C. § 1144(d) (Supp. V, 1975) provides that ERISA shall not be construed to supersede any law of the United States. The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* (1970), mandates that the business of insurance shall be regulated by the states. In light of these statutory considerations, the ultimate success of plaintiffs' preemption claim is questionable at best.

### V. *Impairment of Contract*

 With regard to plaintiffs' argument that the Act unconstitutionally impairs its contractual obligations, the court confesses that it feels somewhat trapped by the jargon of the insurance industry. Defendants have conceded that policies known as guaranteed renewable non-cancelables are not subject to the Act's requirements. These policies, as defined by defendants, are renewable at the sole option of the policyholder upon the payment of the premium. The insurer cannot alter coverage and cannot alter the premium except on a class-wide basis. Plaintiffs initially claimed that such policies were covered by the statute, and since premiums could not be raised on an individual basis, the statute's requirement of enhanced coverage for renewables worked an unreasonable and unconstitu-

tional impairment of plaintiffs' contractual obligations. The court is not sure how much further plaintiffs' argument goes. Does the impairment claim extend to mere guaranteed renewables? These are policies which are renewable on the payment of a premium, but the premium is adjustable on an individual basis. The court will assume that plaintiffs also contend that these contracts are unconstitutionally impaired by the Act.

The court will accept plaintiffs' rather narrow test for analyzing impairment claims for the purpose of discussion. This test is two-fold. First, there must be an actual impairment and second, that impairment must be unreasonable. *Home Building and Loan Asso. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). Although it appears that the existing policies will be impaired since the renewal aspect is a part of the existing contract, the court does not feel that this impairment is unreasonable. Under the statute, the enhanced coverage must be included in the renewed policy. The policyholder may reject this coverage in writing and maintain the old policy by paying the designated premium. In the alternative, the policyholder can accept the new coverage and be liable for an appropriately adjusted premium. In a commercial contract situation such as this, it would seem that impairments of contracts caused by enactment of state laws during the contract period are reasonable as long as the contract price can be adjusted to compensate for the new obligations. The court finds no unconstitutional impairment of the guaranteed renewable policies. It is possible that there are contracts which lie somewhere between the two types discussed with regard to the insurer's ability to adjust the premium. However, the parties have chosen not to explore the effect of the statute on them, so for purposes of the present motion, the court need not explore the issue further.

The plaintiffs came to this court very late preventing more extensive study of the constitutional claims presented. However, the court is satisfied from the record, briefs, and arguments that while the Minnesota Comprehensive Health Insurance Act of 1976 is far from perfect, it appears to permissibly impose new obligations on health and accident insurance carriers licensed in this state. Plaintiffs have not shown a substantial probability of success on the merits, and the grant of a preliminary injunction would impose greater harm upon the defendants and the public than a denial of it would impose on the plaintiffs.

Plaintiffs' motion for a preliminary injunction is DENIED. The foregoing shall constitute the court's findings of fact and conclusions of law.