**Julius SHAW, Plaintiff-Appellant,**

v.

**Thomas HARNETT, as Superintendent of New York State Department of Insurance, Defendant-Appellee.**

**No. 127, Docket 78–7254.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1978.

Decided Nov. 13, 1978.

Jane Greengold Stevens, New York City (Legal Services for the Elderly Poor, New York, N. Y., Jonathan A. Weiss, New York City, of counsel), for plaintiff-appellant.

Patricia C. Armstrong, New York City (Atty. Gen. of the State of New York, Louis J. Lefkowitz, and Samuel A. Hirshowitz, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the District Court for the Southern District of New York dismissing an action under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), for failing to state a claim on which relief can be granted. The case is an example of the totally meritless § 1983 action which makes needless demands upon state law departments and federal judges and, by uselessly adding to the flood of such suits, may obscure others which call for relief. Compare Mr. Justice Jackson's observation on frivolous petitions for habeas corpus in *Brown v. Allen,* 344 U.S. 443, 536–37, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (concurring opinion).

Plaintiff does not have the use of his legs and drives his automobile with the aid of special operating devices installed therein. The complaint alleges that he had applied to Colonial Penn Insurance Company (Colonial Penn) for an automobile liability insurance rate quotation; that it had declined to make one because of Mr. Shaw's disability; and that defendant Harnett, New York State's Superintendent of Insurance, had refused to direct a hearing under provisions of the New York Insurance Law §§ 180, 183 and 186, which require insurers to establish rates that are reasonable and non-discriminatory and authorize enforcement of this by appropriate means.[1] Exhibits attached to the complaint show that, after receiving the request of Mr. Shaw's counsel, Jonathan A. Weiss, of Legal Services for the Elderly Poor, the Superintendent had made inquiry of the insurer and had received a detailed answer wherein Colonial Penn explained that, although it insured drivers suffering from less serious handicaps without any discrimination in rate, Mr. Shaw's condition "presented an additional risk which we considered to be unacceptable." Colonial Penn considered the case to be one not of discrimination but of an exercise of underwriting judgment, to which §§ 183 and 186 did not

apply. The Department forwarded a copy of Colonial Penn's letter to plaintiff's counsel and apparently concurred in its legal conclusion. Further demands on the Department of Insurance by Mr. Weiss were unproductive.

The complaint said nothing about what Mr. Shaw had done to obtain liability insurance after Colonial Penn had declined to quote a rate and the Superintendent had refused to pursue the matter. When we inquired about this at argument, plaintiff's counsel told us that Mr. Shaw had obtained insurance under New York's assigned risk plan, Insurance Law § 63, at a premium presumably higher than those charged by Colonial Penn for accepted risks, and considerable time was spent in discussing the legal effect, if any, of this. Counsel later advised us by letter that she had been mistaken in her answer and that Mr. Shaw had obtained insurance through another company. For aught that appears, therefore, plaintiff has suffered no financial loss from Colonial Penn's refusal to quote him a rate.[2]

The Department's conclusion that Colonial Penn's refusal to quote a rate to Mr. Shaw did not come within §§ 183 and 186 was clearly correct, as explained by

---

1. Specifically § 186–3 states:

   3. Proceedings under this section may be instituted upon the initiative of the superintendent or upon written application to the superintendent by any aggrieved person or organization, other than a rating organization, for a hearing if the superintendent shall find that the application is made in good faith and that the grounds otherwise justify holding such a hearing.

   The complaint also referred to § 209 of the N. Y. Insurance Law which relates to life, accident and health insurance and has no conceivable hearing on this case.

   At oral argument in this court plaintiff's counsel sought to add Art. IX–D of the N. Y. Insurance Law, including the provision of § 275 with respect to hearings, which she had discovered in preparing for argument. There was some debate about this which was beclouded by the fact that the court had not been apprised of this contention and no copies of the statute had been provided for it. Apart from the fact that no Art. IX–D claim was made in the district court, counsel would have been better advised to keep her discovery to herself. Even a quick reading should have sufficed to show

   her that Art. IX–D is wholly inapplicable. The purpose of that Article, added by Laws 1948, c. 501, effective July 1, 1948, was, as clearly stated in § 270, "to regulate trade practices in the business of insurance in accordance with the intent of congress as expressed in the act of congress of March ninth, nineteen hundred forty-five (Public Law 15, 79th Congress), as amended, [the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–15], by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts and practices and by prohibiting the trade practices so defined and determined." These practices, defined in § 273 and prohibited by § 272, are not within light years of an insurer's refusing to accept a particular risk.

2. If he has, this may well be due to the fact that, as explained in Colonial Penn's letter to the Insurance Department, its automobile insurance program was a "preferred risk" program designed to afford lower than usual rates to "a segment of the total population, drivers age 50 and over" and careful risk selection was essential to achieve this goal.

Judge Ward in his opinion below. This was both because on their face §§ 183 and 186 deal with discrimination in premiums for existing policies and not with a refusal to write a policy.[3] and because, when the New York Legislature has wished to prohibit discriminatory refusal to issue a policy, it has known how to say so. The three provisions on this subject that it has enacted, which we cite in the margin,[4] manifestly do not cover Mr. Shaw's case.

This case thus does not require us to enter into the controversy, prompted by recent decisions such as *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), whether the liberty and property protected by the due process clause of the Fourteenth Amendment are measured by state law if not explicitly protected by the Constitution or have some minimum content independent of such law. See Tribe, American Constitutional Law, §§ 10–10 and –11 (1978); Monaghan, Of "Liberty" and "Property", 62 Cornell L.Rev. 405 (1977); Glennon, Constitutional Liberty and Property: Federal Common Law and Section 1983, 51 S.Cal.L.R. 355 (1978). The staunchest advocates of the latter view would not argue that one person has a liberty or property interest deriving from the Constitution itself in forcing another to contract with him against the latter's will. Any liberty interest in this case would be in protecting the latter person, here Colonial Penn, from being compelled to contract when it does not wish to do so.[5] Looking also at rights of liberty and property created by New York law we cannot remotely discern what the Superintendent has done to deprive Mr. Shaw of any of them. Dismissal of the complaint for failing to state a claim upon which relief can be granted was thus abundantly justified.[6]

Judgment affirmed.

3. We would not wish to be understood as agreeing that any allegedly unjustifiable refusal by the Superintendent to conduct a hearing with respect to a true claim of rate discrimination would constitute sufficient basis for an action under 42 U.S.C. § 1983. The implications of a position that every error by a state agency in applying the hearing provisions of a regulatory statute gives rise to such a claim would be far-reaching indeed.

4. Section 40(10) of the Insurance Law, prohibiting various forms of discrimination with respect to outstanding policies "because of race, color, creed or national origin" *also* makes it unlawful for an insurance company to "reject any application for a policy of insurance issued and/or sold by it, or refuse to issue, renew or sell such policy" on that ground. Section 40–e states:

No association, corporation, firm, fund, individual, group, order, organization, society or trust shall refuse to issue any policy of insurance, or shall cancel or decline to renew such policy because of the sex or marital status of the applicant or policyholder.

Section 167–a(8) provides:

No insurer shall refuse to issue or renew a covered policy solely on the ground of the advanced age of the applicant or insured.

We do not mean to imply that violation of any of these provisions by an insurer would constitute the state action necessary to trigger § 1983.

5. That interest, of course, is not absolute. See, e. g., *California State Automobile Ass'n Inter-Insurance Bureau v. Maloney,* 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951) (sustaining California Compulsory Assigned Risk Law).

6. The judge also dismissed plaintiff's "pendent" state law claim. While it might have been preferable to leave this to the state courts, the decision was clearly correct and we shall not disturb it.