699 F.2d 690
 The PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant,
v.
INSURANCE COMMISSION OF the SOUTH CAROLINA DEPARTMENT OF
INSURANCE, Rogers T. Smith, Chief Insurance
Commissioner, South Carolina Reinsurance
Facility, Appellees.
 No. 82-1346.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1982.
Decided Feb. 10, 1983.
 
 Joseph J. Blake, Greenville, S.C. (W. Francis Marion, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S.C., on brief), for appellant.
 Thomas C. Salane, Columbia, S.C. (Turner, Padget, Graham & Laney, P.A., L. Kennedy Boggs, Gen. Counsel, Columbia, S.C., South Carolina Dept. of Ins. on brief), for appellees.
 Before HALL and MURNAGHAN, Circuit Judges, and MICHAEL,* District judge.
 K.K. HALL, Circuit Judge:
 
 
 1
 The Prudential Property and Casualty Insurance Company (Prupac) filed this action for monetary damages and declaratory relief against the Insurance Commission of the South Carolina Department of Insurance (the Commission), the State Insurance Commissioner, and the South Carolina Reinsurance Facility, claiming that the insurance regulatory scheme of the state's Automobile Reparation Reform Act of 1974, S.C.Code Secs. 38-37-10 et seq. (1976), violated its constitutional rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution. Following a trial without a jury, the district court concluded that the legislation, commonly known as Act 1177, and its regulatory plan of operation were constitutional and, entered judgment in favor of the defendants. Prudential Property and Casualty Co. v. Insurance Commission, etc., 534 F.Supp. 571 (D.S.C.1982). Finding no error in the district court's disposition of this action, we affirm.
 
 
 2
 In 1974, as part of its efforts to reform automobile insurance practices and to facilitate the procurement of adequate insurance at reasonable rates for all drivers, the South Carolina legislature passed Act 1177. This legislation requires automobile insurance carriers doing business in the state to write or renew policies for all insurable applicants, whether or not they are good or poor insurable risks. S.C.Code Secs. 38-37-310 (1976). Pursuant to the statute, the Reinsurance Facility was established in order to permit insurers to cede or assign to the Facility a reasonable number of risks eligible for reinsurance and to distribute the net operating profit or loss on these risks equitably among all insurers. S.C.Code Sec. 38-37-110(4) (1976). Excessive or unreasonable use of this reinsurance privilege is, however, prohibited. S.C.Code Sec. 38-37-950 (1976). As originally promulgated the Facility's Plan of Operation provided for the distribution of the net losses or gains of the Facility based upon an individual insurer's share or penetration of the market. Under this approach, for example, an insurer writing ten percent of the total market in premium dollars would assume ten percent of the net operating profit or loss of the Facility, even if that insurer had ceded no policies.
 
 
 3
 In 1979, the Plan of Operation was amended to provide for a profit or loss distribution based primarily upon the individual insurer's utilization of the Facility. For example, an insurer which cedes twenty percent of the policy amounts received by the Facility for any one particular year, would be charged with one-fifth of the Facility's losses which occur during that year. An insurer who cedes no policies to the Facility would owe nothing. However, the market penetration approach was not completely abandoned under the amended Plan of Operation, which provides for the distribution of losses based upon a weighted average of an insurer's penetration of the market and its utilization of the Facility. Participation in the Reinsurance Facility is a condition of doing business in the state. S.C.Code Sec. 38-37-720 (1976).
 
 
 4
 In 1973, when Prupac first entered the market in South Carolina, these statutory reforms had not yet been enacted and insurance carriers were allowed to provide high risk drivers with less protection at substantially higher rates than the coverage afforded those with good driving records. Prupac, a wholly-owned subsidiary of the Prudential Insurance Company, utilized the in-place life insurance agency force of its parent company to help solicit automobile insurance applicants. Prupac's own witness at trial acknowledged that Prudential's agents were located in the state's urban areas where there is a high percentage of the poor risk market. Nevertheless, Prupac selected a rate for its automobile insurance policies which was low enough for the company to remain competitive with the state's largest, established insurers.
 
 
 5
 Prupac claimed that because it was a new entry in the South Carolina insurance market, it had attracted a disproportionately large share of poor risk drivers during its early years of operation in the state. It further maintained that the new regulatory scheme forced it to retain this disproportionate share of poor risks and to enact rate increases which have effectively priced the company out of the South Carolina insurance market. Prupac brought this action challenging the equitable loss sharing provisions implemented pursuant to Act 1177. It contended that use of the Facility utilization or market penetration approaches, either separately, or combined as in the present amended plan, resulted in an inequitable sharing of the costs of insuring poor risks in the state and was thus unconstitutional under the Fourteenth Amendment.
 
 
 6
 On appeal, Prupac's primary arguments are that these methods of apportioning losses violate its right to equal protection and represent a confiscatory taking of its property. Like the court below, we see no merit in either of these contentions.
 
 
 7
 Prupac has failed to show any action on the part of the state which has resulted in its acquisition of a disproportionate share of poor risk drivers. Moreover, by utilizing agents located in urban areas certain to attract poor risks and by failing to adequately adjust its rates to control losses, Prupac has obviously invited its own disaster. Prupac's arguments completely ignore the role which the marketplace inevitably plays in such transactions. There is nothing, for instance, to prevent the poor risks now insured by Prupac from changing to other insurance carriers in the future. Under the South Carolina scheme, every insurance carrier faces precisely the same market conditions and the same necessity of adopting appropriate rates and marketing strategies to meet these changed conditions.
 
 
 8
 As long as this statutory scheme bears a rational relationship to a permissible state objective, it withstands any attack on equal protection grounds. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Certainly it is permissible for a state to guarantee adequate insurance coverage for all drivers. It is also clear that the establishment of the Reinsurance Facility and its cession requirements, which are designed to discourage overutilization by any one insurer, bear a rational relationship to this legitimate state goal. Thus, we can only conclude that the legislative scheme does not violate the Fourteenth Amendment's equal protection clause.
 
 
 9
 Nor can we agree with appellant that South Carolina's regulatory plan represents a confiscatory taking of Prupac's property within the meaning of due process. As the Supreme Court held in California State Auto. Ass'n Inter-Insurance Bureau v. Maloney, 341 U.S. 105, 110-111, 71 S.Ct. 601, 603-604, 95 L.Ed. 788 (1951):
 
 
 10
 Whether California's program is wise or unwise is not our concern.... The problem is a local one on which views will vary. We cannot say California went beyond permissible limits when it made the liability insurance business accept insurable risks which circumstances barred from insurance and hence from the highways. Appellant's business may of course be less prosperous as a result of the regulation. That diminution in value, however, has never mounted to the dignity of a taking in the constitutional sense (citations omitted).
 
 
 11
 This same reasoning applies to South Carolina's insurance program.
 
 
 12
 After a careful review of the record, we have determined that Prupac's additional challenges to the judgment below are likewise without merit. Accordingly, the district court's judgment is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation