**MINNESOTA TRUST COMPANY OF AUSTIN, Minnesota, Appellant,**

v.

**Michael HATCH, Commissioner of Commerce, et al., Respondents.**

**No. CX–84–2055.**

Court of Appeals of Minnesota.

May 28, 1985.

Kurt Stertz, Warren F. Plunkett & Assoc., Austin, for appellant.

Hubert H. Humphrey, III, Atty. Gen., James Early, Thomas F. Pursell, Sp. Asst. Attys. Gen., St. Paul, for respondents.

Heard, considered and decided by NIER-ENGARTEN, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellant Minnesota Trust Company brought this declaratory judgment action against respondent Michael Hatch, Commissioner of the Minnesota Department of Commerce, alleging that Minn.Stat. § 46.-045 (1984) violates the contract clauses of the Minnesota and United States constitutions. Minnesota Trust appeals from the trial court's dismissal of its action for failure to state a claim upon which relief may be granted. We affirm.

## FACTS

Minnesota Trust Company obtained a corporate charter from the State of Minnesota in 1945. The charter empowered Minnesota Trust to accept savings deposits, to act as a real estate broker, and to underwrite surety bonds. At the start of this action Minnesota Trust's underwriting comprised 60% of its business activity.

In 1982 the Minnesota Legislature enacted Minn.Stat. § 45.071 (1982), now codified as Minn.Stat. § 46.045 (1984). That statute requires all banks and trust companies, savings and loan associations, credit unions, and industrial loan and thrift companies to obtain insurance with the Federal Deposit Insurance Corporation (F.D.I.C.):

> Every bank shall at all times maintain in effect insurance of its deposits by the federal deposit insurance corporation, an agency of this state or a federal agency established for the purpose of insuring deposits in banking institutions. * * *

Minn.Stat. § 46.045, subd. 1.

F.D.I.C., however, will not insure Minnesota Trust unless it ceases underwriting surety bonds. 12 C.F.R. § 332.1 and 332.2.

Minnesota Trust brought this action alleging that Minn.Stat. § 46.045 impairs its right to underwrite surety bonds and seeking a declaration that Minn.Stat. § 46.045 violates the contract clauses of the state and federal constitutions.

## ISSUE

Does a statute requiring a trust company to maintain insurance with the Federal Deposit Insurance Corporation unconstitutionally impair its corporate charter under the contract clauses of the state and federal constitutions?

## ANALYSIS

"No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." U.S. Const., Art. I, § 10, cl. 1. Our state's contract clause contains similar language: "No * * * law impairing the obligation of contracts shall be passed * * *" Minn. Const. art. I, § 11. Despite the absolute prohibition implied by these clauses, contractual obligations are subject to a state's inherent police powers "to safeguard the vital interests of its people." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983), *quoting, Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 434, 54 S.Ct. 231, 238, 78 L.Ed. 413 (1934).

■ To establish a violation of the federal contract clause a challenger must meet a three-part test. First, the state law must operate "as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978). If substantial impairment is shown a law may still be valid provided that the state has "a significant and legitimate public purpose behind the regulation". *Energy Reserves Group,* 459 U.S. at 411, 103 S.Ct. at 704. (burden of proof). In addition, the legislative plan to promote the

public purpose must be based upon "reasonable conditions" and be of "a character appropriate to the public purpose." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977). The Minnesota Supreme Court applies this test to challenges relying upon our state's contract clause. *Christensen v. Minneapolis Municipal Employee Retirement Board,* 331 N.W.2d 740, 750–51 (Minn.1983).

■ Respondent first contends that Minnesota Trust's corporate charter is not a contract and therefore is not protected by the contract clause. Respondent's position misinterprets the law for it is well established that corporate charters are contracts within the meaning of the contract clause. *Trustees of Dartmouth College v. Woodward,* 17 U.S. 518, 4 Wheat. 518, 4 L.Ed. 629 (1819); *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934), *affirming,* 189 Minn. 422, 249 N.W. 334 (1933); *Grisim v. South St. Paul Live Stock Exchange,* 152 Minn. 271, 276, 188 N.W. 729, 731 (1922). The issue is whether Minnesota Trust's corporate charter qualifies for protection under the contract clause analysis.

*Substantial Impairment*

■ Not every impairment of a contractual right is sufficient to constitute a substantial impairment, *see Allied Structural Steel Co. v. Spannaus,* 438 U.S. at 245, 98 S.Ct. at 2722, but complete annulment has not been required to raise a constitutional challenge. *Energy Reserves Group,* 459 U.S. at 411, 103 S.Ct. at 704, *citing United States Trust Co.,* 431 U.S. at 26–27, 97 S.Ct. at 1519–20. Assuming the impairment is substantial, the severity of impairment affects the scrutiny given to the statute. *Allied Structural Steel Co.,* 438 U.S. at 245, 98 S.Ct. at 2722.[1] An

---

1. The greater the impairment, the higher the standards will be for a statute under the latter two parts of the three-part test. *See Energy Reserves Group,* 459 U.S. at 411, 103 S.Ct. at 704;

*Allied Structural Steel Co.,* 438 U.S. at 245, 98 S.Ct. at 2722. This method apparently requires a court to balance the loss suffered by the chal-

important consideration in evaluating the severity of impairment is whether the activity regulated by the statute has been regulated in the past. *Energy Reserves Group,* 459 U.S. at 411, 103 S.Ct. at 707. As the Court said in *Veix v. Sixth Ward Building & Loan Association,* 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940): "When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic." *Id.* at 38, 60 S.Ct. at 794.

▮▮▮ The Minn.Stat. § 46.045 requirement that Minnesota Trust be F.D.I.C.-insured effectively revokes Minnesota Trust's right under the corporate charter to underwrite surety bonds, for F.D.I.C. will not insure Minnesota Trust unless it ceases underwriting. Minnesota Trust pleaded that it has long exercised that right to its advantage, and that 60% of its business activity now involves underwriting those bonds. The manifest harm suffered by Minnesota Trust constitutes a substantial impairment. The severity of that impairment is tempered only by Minnesota's long history of heavily regulating banking activities. *See American State Bank v. Jones,* 184 Minn. 498, 500, 239 N.W. 144, 145 (1931) ("It must be borne in mind that banks are a distinct class of corporations, charged with a public interest and subject to strict supervision by the executive department of the state.")

### Public purpose

▮▮▮ To justify impairing contractual rights the state must identify a significant and legitimate public purpose "such as the remedying of a broad and general social or economic problem." *Energy Reserves Group,* 459 U.S. at 412, 103 S.Ct. at 705. This requirement insures that the state is exercising its police powers and not acting to benefit narrow interests. *Id.*

▮▮▮ The legislature's purpose in enacting Minn.Stat. § 46.045 fits that definition. Its obvious goal is to protect depositors of institutions such as Minnesota Trust from loss through bank failure, an undisputedly vital social concern.

### Reasonable statutory means

Even though Minn.Stat. § 46.045 was passed to serve a significant and legitimate public purpose it still may fall to Minnesota Trust's challenge if the legislation is not reasonably and appropriately tailored to accomplish its goal. *United States Trust Co.,* 431 U.S. at 22, 97 S.Ct. at 1517.

Minnesota Trust contends that Minn. Stat. § 46.045 is superfluous because existing regulations provide depositors with adequate security. According to Minnesota Trust the statute is a needless and unreasonable impediment to Minnesota Trust's business activities.

Minnesota Trust identifies two regulations which it claims provide adequate security to depositors. One is Minn.Stat. § 47.23, subd. 1 (1982) which provides in part:

> Savings deposits received by such a trust company shall be invested only in authorized securities,[2] as defined by law, and the trust company shall keep on hand, at all times, such securities in an amount at least equal to the amount of the deposits, and these securities must be the representative of, and the fund for, applicable first and exclusively to the payments of, the savings deposits.

In 1982, under the supervision of the respondent's Department of Commerce, Minnesota Trust held approximately $100,000 in authorized securities to secure $70,000 in deposits.

The second existing law governing Minnesota Trust's activities is Minn.Stat. § 48.-67 (1982) which provides in part as follows:

lenger against the state's justification for enacting the statute.

**2.** "Authorized securities" are defined in Minn. Stat. § 50.14 (1982) as members of any one of twelve different classes of securities, including various types of government and corporate bonds.

The capital of every trust company hereafter organized shall be not less than $500,000. There shall also be provided a surplus of at least 20 percent of capital in addition to such capital amounts in each case and neither the capital nor the surplus so provided shall be reduced without the approval of the commissioner of banks. No trust company hereafter organized shall transact any business until all of its authorized capital stock and required surplus have been paid in, in cash, and at least 25 percent of the capital has been invested in one or more of the first, second, third, and fourth classes of authorized securities * * * The state treasurer shall submit the securities deposited to the commissioner, who shall carefully examine the securities offered for deposit and ascertain that they comply with all the provisions of law applicable thereto. * * * This deposit shall be maintained unimpaired as a guaranty fund for depositors and creditors and for the faithful discharge of its duties, with the right to collect the income thereof and to substitute other like authorized securities, of equal amount and value, upon approval and order of the commissioner.

Pursuant to Minn.Stat. § 48.67, Minnesota Trust deposited $125,000 into the guaranty fund with the State of Minnesota.

Minnesota Trust's argument shows that Minn.Stat. §§ 47.23 and 48.67 provide depositors with protection, but when this court evaluates the reasonableness and appropriateness of economic regulations we should defer to legislative judgment. *Energy Reserves Group*, 459 U.S. at 412–13, 103 S.Ct. at 705–06, *citing United States Trust Co.*, 431 U.S. at 22–23, 97 S.Ct. at 705–706. Because careful review of these regulations shows that F.D.I.C. insurance provides protection to depositors beyond that provided by sections 47.23 and 48.67, we must defer to the legislature's determination that the added protection is appropriate.

While Minn.Stat. § 47.23 requires trust companies to keep on hand authorized securities in excess of its deposits and empowers the commissioner to monitor compliance, it does not prevent the loss of those securities through fraud, embezzlement or gross mismanagement. F.D.I.C. protects depositors from the risk that a financial institution will become insolvent, regardless of cause. The other existing prophylactic legislation, Minn.Stat. § 48.67, requires Minnesota Trust to deposit additional securities with the state "as a guaranty fund for depositors *and creditors and for the faithful discharge of its duties * * *"* (emphasis supplied). Under Minnesota law, savings depositors are merely general creditors of an insolvent financial institution and thus must share those funds with other general creditors after any secured claims have been satisfied. *Campion v. Big Stone County Bank*, 177 Minn. 51, 224 N.W. 258 (1929). F.D.I.C. insurance, however, insures depositors for the full amount of their deposit up to $100,000. Therefore, we hold that Minn.Stat. § 46.045 is a reasonable and appropriate means of securing the savings of depositors in trust companies.

### DECISION

We affirm the trial court's decision declaring that Minn.Stat. § 46.045 does not violate the contract clauses of the state or federal constitutions.