**MIDWEST FAMILY MUTUAL
INSURANCE COMPANY,
Appellant,**

v.

**Friedubert H. BLEICK, personal representative of the Estate of Ellsworth H. Bleick, Respondent.**

No. C9–91–1921.

Court of Appeals of Minnesota.

May 19, 1992.

Review Granted in Part and
Remanded for Limited Purpose;
Review Denied July 27, 1992.

Jeffrey O. Knutsen, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for appellant.

Steven D. Emmings, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for respondent.

Considered and decided by LANSING, P.J., and KALITOWSKI, and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Midwest Family Mutual Insurance Company commenced this declaratory judgment action seeking a determination whether it was obligated to provide "add-on" or "difference of limits" underinsured motorist (UIM) coverage arising out of the death of its insured, Ellsworth H. Bleick. The parties brought cross-motions for summary judgment. The trial court granted summary judgment in favor of respondent Friedubert H. Bleick, personal representa-

tive of the Estate of Ellsworth H. Bleick, determining Midwest Family was obligated to provide an additional $30,000 in add-on coverage. Midwest Family appeals.

## FACTS

On August 18, 1989, a vehicle driven by Ellsworth was involved in a collision with a vehicle driven by George Schefus. As a result of this accident, Ellsworth sustained injuries resulting in his death on September 8, 1989.

The Schefus vehicle was insured by Austin Mutual Insurance Company, which provided $30,000 in liability insurance limits. Austin Mutual paid the policy limits to Ellsworth's heirs.

The Bleick vehicle was insured by Midwest Family, which provided underinsured motorist benefit limits of $100,000. Midwest Family paid $70,000 of the coverage provided by this policy, and these funds have been distributed to Ellsworth's heirs. The parties stipulated that Ellsworth's heirs sustained damages in excess of $130,000.

The Midwest Family policy on the Bleick vehicle was issued for a six-month policy period from May 1, 1989 to November 1, 1989. The policy complied with the requirements of the Minnesota No–Fault Act when issued on May 1, 1989.

Legislation amending Minn.Stat. § 65B.49, subd. 4a was signed into law on May 19, 1989. The legislation had an effective date of August 1, 1989, during the policy period and prior to the accident which resulted in Ellsworth's death. These amendments changed UIM coverage from difference of limits coverage to add-on coverage.

1989 Minn.Laws ch. 213, § 3, which specified the effective date of the change in UIM coverage from difference of limits to add-on, provided as follows:

> Sections 1 and 2 are effective for all contracts issued or renewed on or after August 1, 1989, or for all injuries occurring on or after August 1, 1989, or for deaths occurring as the result of injuries sustained on or after August 1, 1989.

Ellsworth's heirs demanded an additional $30,000 in UIM coverage. Midwest Family denied this demand, contending the law in effect at the time the policy was issued controlled and limited Midwest Family's liability to difference of limits coverage. Midwest Family then commenced the present declaratory judgment action, seeking a determination whether it was obligated to provide difference of limits or add-on coverage. The parties brought cross-motions for summary judgment. The trial court granted summary judgment in favor of Ellsworth's heirs, and Midwest Family has appealed.

## ISSUES

1. Did the trial court err in not enforcing the difference of limits calculation of UIM benefits contained in the Midwest Family policy?

2. Did the trial court's application of 1989 Minn.Laws ch. 213, § 2 constitute a retroactive application of the statute?

3. Does 1989 Minn.Laws ch. 213, § 2 violate the contract clauses of the Minnesota or United States Constitutions?

## ANALYSIS

*Standard of Review*

In reviewing a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In the present case, the trial court's grant of summary judgment was based on its interpretation of a statute, a legal question which this court reviews de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I. Midwest Family's Contract

Midwest Family contends the insurance policy should be governed by the statutes in effect on the date of the issuance of the policy. In the present case, that would be May 1, 1989, at which time UIM cover-

age was difference of limits coverage, rather than add-on.

Accepting Midwest Family's argument that the policy should be construed according to the law in existence on May 1, 1989 would require the court to ignore 1989 Minn.Laws. ch. 213, § 3, which specified the effective date of the 1989 amendments to section 65B.49, subd. 4a. As noted earlier, the amendments were

> effective for all contracts issued or renewed on or after August 1, 1989, *or* for all injuries occurring on or after August 1, 1989, *or* for deaths occurring as the result of injuries sustained on or after August 1, 1989.

1989 Minn.Laws ch. 213, § 3 (emphasis added).

Midwest Family argues that the effective date language can only be given effect by construing "or" to mean "and." This argument is contrary to the plain language of the statute. The statutory enactment specifies three situations in which the 1989 amendments will apply.

First, any automobile insurance policy issued or renewed on or after August 1, 1989 must contain add-on UIM coverage. Second, insureds making UIM claims for injuries that occurred on or after August 1, 1989 are entitled to add-on, rather than difference of limits, UIM coverage. Finally, UIM benefits payable for deaths occurring as the result of injuries sustained on or after August 1, 1989, will be add-on UIM coverage. In the present case, Ellsworth qualifies for the second and third categories affected by the 1989 amendments. He suffered injuries after August 1, 1989, and died as a result of his injuries after August 1, 1989. The trial court correctly required Midwest Family to provide add-on coverage, despite the difference of limits calculation in effect on May 1, 1989.

## II. Retroactivity

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (1990). The present case does not involve retroactive application of a statute. The amendments to section 65B.49, subd.

4a were signed by the governor on May 19, 1989. The effective date was August 1, 1989. Ellsworth's accident occurred on August 19, 1989, and his death occurred on September 8, 1989. At the time the amendments to section 65B.49, subd. 4a went into effect, the Bleicks had no claim against Midwest Family. Their claim did not arise until after the effective date of the statute.

When a statute is enacted that applies to existing causes of action, application of that statute is retroactive. *K.E. v. Hoffman*, 452 N.W.2d 509, 512 (Minn.App. 1990), *pet. for rev. denied* (Minn. May 7, 1990) (Minn.Stat. § 541.073 (Supp.1989) to be applied retroactively; statute applied to "actions pending" on its effective date). Unlike *K.E.*, in the present case, the Bleicks had no claim against Midwest Family until after August 1, 1989. The fact that a pre-existing insurance contract was affected does not make application of the statute to Ellsworth's accident and death occurring after the statute's effective date a retroactive application of the statute. Because the injury and death occurred after the effective date of the statute, there is no retroactive application. *See Cooper v. Watson*, 290 Minn. 362, 367–68, 187 N.W.2d 689, 692–93 (1971) (injury before statute's effective date); *Baune v. Farmers Ins. Exch.*, 283 Minn. 54, 55–56, 166 N.W.2d 335, 336–37 (1969) (same); *Muckler v. Buchl*, 276 Minn. 490, 500–01, 150 N.W.2d 689, 697 (1967) (statute increasing ceiling on wrongful death recoveries inapplicable to accident occurring before enactment).

## III. Impairment of Contract

"No State shall * * * pass any * * * Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The Minnesota Constitution similarly provides: "No * * * law impairing the obligation of contracts shall be passed." Minn. Const. art. I, § 11. Although the prohibitions of these clauses appear absolute, contractual obligations are subject to a state's inherent police powers "to safeguard the vital interests of its people." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74

L.Ed.2d 569 (1983), *quoted in Minnesota Trust Co. of Austin v. Hatch*, 368 N.W.2d 372, 375 (Minn.App.1985). As one court has noted,

> the place of the Contracts Clause in our constitutional framework has occupied the attention of the Supreme Court from the very beginning. The Court has recognized that certain state legislation, designed to alleviate social and economic difficulties, was subject to the objection that it impaired the obligations of contracts in existence at the time the legislation was enacted. But in order to preserve that which it thought to be meritorious legislation, the principle was devised and developed by the United States Supreme Court that the States' police power "is an exercise of the sovereign right of the government to protect the * * * general welfare of the people, and is paramount to any rights under contracts between individuals."

*Willys Motors, Inc. v. Northwest Kaiser–Willys, Inc.*, 142 F.Supp. 469, 471 (D.Minn. 1956) (quoting *Manigault v. Springs*, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)). The United States Supreme Court has adopted a three-part test to determine whether a contractual impairment is unconstitutional. *See Energy Reserves*, 459 U.S. at 411–13, 103 S.Ct. at 704–05. The Minnesota Supreme Court has adopted the three-part test of *Energy Reserves*. *Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 750–51 (Minn.1983).

■ Under the *Energy Reserves* analysis, the court must first determine whether the law in question has, in fact, substantially impaired a contractual obligation. If a substantial impairment exists, the law may be upheld if the state has a significant and legitimate public purpose behind the legislation. Finally, the legislation must be reasonably and appropriately tailored to accomplish the asserted public purpose. *See Jacobsen v. Anheuser–Busch, Inc.*, 392 N.W.2d 868, 872 (Minn. 1986). The three-part test of *Energy Reserves* is applied with less scrutiny to a private contract than to a contract to which the state is a party. *See Christensen*, 331 N.W.2d at 751.

■ A party challenging the constitutionality of a statute has the burden of proving beyond a reasonable doubt a violation of a constitutional provision. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn.1984). A statute carries a presumption in favor of its constitutionality, *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980), and should be declared unconstitutional only when absolutely necessary. *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn.1979).

### A. Substantial Impairment

■ The greater the impairment of a contract, the higher the standards will be for a statute under the second and third elements of the three-part *Energy Reserves* test. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 98 S.Ct. 2716, 2722–23, 57 L.Ed.2d 727 (1978). The court must balance the loss suffered by the challenger against the state's justification for enacting the statute. *See Minnesota Trust Co.*, 368 N.W.2d at 375 n. 1. In evaluating the severity of impairment, an important consideration is whether the activity regulated by the statute has been regulated in the past. *Energy Reserves*, 459 U.S. at 411, 103 S.Ct. at 704; *Veix v. Sixth Ward Bldg. & Loan Ass'n.*, 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061 (1940); *Minnesota Trust Co.*, 368 N.W.2d at 375–76.

■ In the case of the 1989 amendments, the severity of the impairment of contract will vary according to the level of liability insurance carried by a particular tortfeasor. In the present case, the tortfeasor carried $30,000 in liability insurance. Under the old law, Midwest Family would have been obligated to provide up to $70,-000 in UIM benefits. If the tortfeasor had carried $50,000 in liability coverage, Midwest Family would have been obligated to provide $50,000 in UIM coverage. If the tortfeasor had carried $100,000 in liability insurance, Midwest Family would have been obligated to provide no UIM benefits.

Under the new law, Midwest Family is obligated to provide up to $100,000 in UIM benefits regardless of the liability coverage carried by the tortfeasor.

To compensate for any additional UIM exposure created by the statute, insurers can adjust premiums. As one court has noted, albeit in a different context:

> In a commercial contract situation such as this, it would seem that impairments of contracts caused by enactment of state laws during the contract period are reasonable as long as the contract price can be adjusted to compensate for the new obligations.

*Insurers' Action Counsel, Inc. v. Heaton,* 423 F.Supp. 921, 927 (D.Minn.1976). The *Heaton* case involved the Minnesota Comprehensive Health Insurance Act of 1976, Minn.Stat. ch. 62E (1976). Midwest Family can adjust the rates charged to its insureds to compensate for the increased exposure created by the 1989 amendments.

### B. *Public Purpose*

To withstand constitutional challenge, a statute which impairs the obligations of a contract must be for a public, as opposed to a private, purpose. *Willys Motors,* 142 F.Supp. at 471; *Western States Utils. Co. v. City of Waseca,* 242 Minn. 302, 308, 65 N.W.2d 255, 261 (1954); *Minnesota Trust Co.,* 368 N.W.2d at 376. Public purposes include " 'remedying of a broad and general social or economic problem.' " *Jacobsen,* 392 N.W.2d at 874 (quoting *Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. at 704–05). "A law which seeks 'protection of a basic interest of society' will be upheld." *Willys Motors,* 142 F.Supp. at 472 (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 445, 54 S.Ct. 231, 242, 78 L.Ed. 413 (1934)).

The sponsor of 1989 Minn.Laws ch. 213 referred to the bill as a "truth-in-coverage" bill, stating that most insurance consumers who believed they had purchased a specific amount of UIM coverage were surprised to find that amount reduced by at least $30,-000. *Hearing on H.F. 956 Before the Committee on Insurance* (March 29, 1989). An additional stated reason was to maximize the UIM coverage available. *Id.* These concerns meet the public-purpose requirement.

### · C. *Reasonable Means*

In evaluating the reasonableness and appropriateness of the 1989 amendments, this court should defer to the legislature's judgment. *Minnesota Trust Co.,* 368 N.W.2d at 377. The legislation is reasonably and appropriately tailored to meet its stated goals.

### DECISION

The trial court correctly applied 1989 Minn.Laws ch. 213, § 2 to Ellsworth Bleick's August 19, 1989 accident and resulting death. This does not constitute retroactive application of the statute. 1989 Minn.Laws ch. 213, § 3 does not unconstitutionally impair the obligations of contracts.

Affirmed.