FARMERS UNION AGENCY, INC., a Minnesota Corporation; National Farmers Union Property and Casualty Co., a Colorado Corporation; National Farmers Union Standard Insurance Co., a Colorado Corporation, Plaintiffs,

v.

Earl BUTENHOFF; Bert McKasy, in his official capacity as Commissioner of Commerce, Defendants.

Civ. No. 4-92-387.

United States District Court, D. Minnesota, Fourth Division.

Nov. 16, 1992.

Michael R. Quinlivan, Arthur, Chapman, McDonough, Kettering & Smetak, Minneapolis, MN, for plaintiff.

Michael A. Hatch, Siegal, Brill, Greupner, & Duffy, Minneapolis, MN, for Earl Butenhoff.

Alan I. Gilbert, Asst. Minnesota Atty. Gen., St. Paul, MN, for Minnesota Com'r of Commerce.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, Chief Judge.

Farmers Union Agency (Farmers) and its parent companies commenced this declaratory judgement action seeking the court to declare that Minnesota Statute § 60A.177 is not to be applied retroactively and that the statute is unconstitutional as applied to pre-existing contracts between insurance agents, insurers, and their general agents. Now before the court is plaintiffs' motion for summary judgement.

### I.

This case involves Minnesota Statute § 60A.177 concerning the involuntary terminations of agents by insurers. Minn. Stat. § 60A.177 (1991) (amending 60A.177 (1990). The statute establishes a three person board to review insurance agent terminations. The statute only applies to those agents whose agency contract has been in place at least 5 years and who write at least 80% of their business with one insurer or its subsidiaries. Minn.Stat. § 60A.176.

Under the statute, an agent can request a hearing to review his termination before a three-member board selected from a list of 10 agents and 10 insurer representatives compiled by the State Commissioner of Commerce. § 60A.177(2), (3). One member is selected by the agent, one by the insurer, and one by the commissioner. § 60A.177(3). The Commissioner must schedule the hearing within 30 days of the agent's request or longer with the approval of the agent and the insurer. § 60A.177(2). After conducting a hearing, the board determines whether the termination of the agent's agreement was justified. § 60A.177(4). In the event the termination was not justified, the board, in absence of a reasonable contractual financial provision for termination, may order the insurer to pay compensation to the agent. *Id.* The final determination of the board may be appealed by either party to the state district court for a trial *de novo*. § 60A.177(5).

In the present case, all parties agree that the defendant, Earl Butenhoff, entered into contracts with plaintiffs on May 1, 1985, that authorized him to sell insurance in Minnesota on behalf of the plaintiffs. The termination clause in the agreements stated that each party could terminate the agreement without cause upon 30 days notice. Butenhoff sold plaintiffs' insurance from 1985 until 1991. On June 25, 1991, Butenhoff received notice from Farmers that he would be terminated effective July 30, 1991. The termination letter advised Butenhoff that he had a right to a termination hearing before a Board of Review pursuant to Minn.Stat. § 60A.177.

Butenhoff sought injunctive relief in Rice County District Court. The district court granted Butenhoff injunctive relief under Minn.Stat. § 60A.171, which requires 3 months notice before terminating an independent agent.[1] The court enjoined Farmers from terminating Butenhoff before September 15, 1991. The injunction ex-

---

1. Plaintiffs claim that Butenhoff represented to the state court that since he did not write 80% or more of his insurance with one company and its subsidiaries, Minn.Stat. § 60A.177 did not apply. Later he sought a hearing under Minn. Stat. § 60A.177 which only applies where at least 80% of the agent's business is with one company.

pired under its own terms, and Butenhoff was effectively terminated September 15, 1991.

On September 10, 1991, Butenhoff requested a termination hearing from the Minnesota Department of Commerce pursuant to Minn.Stat. § 60A.177. Plaintiffs argued no hearing should be scheduled because Butenhoff did not meet the threshold criteria of 80% business with the same company.

The Department of Commerce, by letter dated December 18, 1991, refused to deny Butenhoff a hearing, saying that the threshold criteria issue could be raised in front of the board. On April 24, 1992, plaintiffs commenced this declaratory judgement action, seeking a determination that Minn.Stat. § 60A.177 is not to be applied retroactively and that the statute is unconstitutional as applied to preexisting contracts between insurance agents, insurers, and their general agents.[2]

## II.

Plaintiffs first argue that Minn.Stat. § 60A.177 may not be retroactively applied to pre-existing contracts. Plaintiffs argue that an application of § 60A.177 in this case would be retroactive because it would modify a pre-existing contract. They state that the only relevant factual question is whether the contract was entered into before the statute was enacted. Here, the parties agree that the contract predated the statute by 5 years. Plaintiffs contend that therefore this is a retroactive application. They say no statute should be construed to apply retroactively unless clearly and manifestly so intended by the legislature. Minn.Stat. § 645.21. Plaintiffs argue that such clear and manifest intent must appear on the face of the statute but it is not present in § 60A.177.

Plaintiffs' second argument is that Minn. Stat. § 60A.177, as applied to pre-existing contracts, constitutes an unconstitutional

impairment of contracts under both the United States and Minnesota State constitutions. The constitutional arguments under state and federal law appear to be the same.

Plaintiffs contend that their contract with Butenhoff, specifically the termination clause authorizing termination by either party without cause upon 30 days notice, would be substantially impaired or eliminated if the court applies § 60A.177. They assert that the right is impaired by the delay and expense of justifying the termination before the board. Furthermore, the right could be eliminated because there is no guarantee that even rightful terminations will be upheld by the review board. Plaintiffs argue that the statute does not contain any special provisions, such as grace periods for contract renegotiation, to lessen its impact on pre-existing contracts. Furthermore, plaintiffs state the statute serves no broad societal purpose. They argue the statute protects a special interest group, insurance agents, and provides no benefits to consumers. Even if there was a societal purpose, plaintiffs contend that application of the statute to pre-existing contracts is not reasonable or necessary to accomplish that goal.

Plaintiffs' final argument is that Minn. Stat. § 60A.177 violates due process by failing to provide any guidelines on what constitutes a "justified" termination. They argue that with no statutory guidance on the definition of "justified", insurers and the Board of Review are left to guess at when an insurance agent may be terminated.

In response to plaintiffs' first argument, defendants contend that there is no retroactive application of the statute in this case. They contend that no vested contractual rights are affected by the statute. They state that the statute simply provides a hearing for agent terminations and in no way prevents plaintiffs from exercising any vested contractual right to terminate

---

2. In their complaint, plaintiffs also claim that the provision for the Department of Commerce to choose the third board member from either the insurer or agent list violates due process. In addition, they say Butenhoff should be prevent-
ed by collateral estoppel from now claiming 80% of his business was with one company, when he claimed less than 80% with one company in the state injunction action.

their agents. Defendant Commissioner of Commerce asserts that § 60A.177 does not impose any new substantive requirements on an insurer's authority to terminate an agent. Rather, they argue that the statute is an alternative dispute resolution device, providing a non-binding, arbitration-type process to resolve disputes between insurance companies and agents regarding agency termination.

Defendants further argue, that even if the statute were being applied retroactively, the legislature intended the statute to cover terminations occurring after the enactment of the statute, even where the agency contract predates the statute. Defendants point to the legislative history of § 60A.177, and the statements of Representative Linda Runbeck concerning the effective date of the statute. Rep. Runbeck was concerned that if there were a delay between enactment and the effective date, there would be a "rash of terminations". The bill was then amended to be effective the day following enactment. Because the statute only applies to agency contracts that have been in effect for 5 years, defendants argue that plaintiffs' interpretation that the statute was not intended to cover pre-existing contracts leads to an absurd result. Under plaintiffs' interpretation, the statute would have no application for at least 5 years after its effective date. Defendants contend that especially in light of Rep. Runbeck's statements and the amendment changing the effective date, the legislature clearly intended § 60A.177 to cover terminations occurring after the statute's effective date, even though the agency contract involved may predate the statute.

Defendants respond to plaintiffs' impairment of contract claims by saying that the statute does not impair plaintiffs' contract and even if it did, the impairment is small and justified as a reasonable means to serve a substantial and legitimate public interest.

Defendants argue that the statute does not impair the local agent's agreement because the statute simply provides for a nonbinding review process and does not add any substantive requirements to the termination rights under the contract. The Department of Commerce states that § 60A.177 does not postpone or extend the time that plaintiffs may exercise their asserted contractual right to terminate Butenhoff. Consequently, because the right to terminate remains intact, there is no impairment of the contract.

Defendants further argue that even if the review process of § 60A.177 is found to be an impairment of the contract, it is not a substantial impairment. They point out that the panel's decision is non-binding and either party can appeal to the district court *de novo*. They argue that the insurance industry is highly regulated and the issue of agent termination has been the subject of public debate and legislation throughout the country. Defendants contend that plaintiffs operate in 34 states and by virtue of the controversy surrounding agent terminations and the plethora of state laws enacted on the subject, plaintiffs could have reasonably anticipated the enactment of a law similar to § 60A.177.

Finally, defendants argue that even assuming *arguendo* that the impairment was substantial, it is justified as a reasonable means to serve a substantial and legitimate public interest. Defendants assert that the purpose of § 60A.177 is to provide an alternative dispute resolution (ADR) process. They argue that it is Minnesota policy to encourage arbitration as a speedy, informal and relatively inexpensive procedure for resolving controversies. ADR is in the public interest because it provides early resolution of conflicts and improves delivery of legal services throughout the court system, by lessening the burden on court calendars. According to the defendants, consumers under the statute benefit because early resolution of agent/insurer disputes reduces the likelihood of consumers getting caught in the middle of policy renewal, claims handling, or application processing disputes. Furthermore, the law is reasonably and appropriately tailored to serve this purpose. Defendants emphasize that the panel's decision may be appealed *de novo* to the district court and argue that the court should defer to legislative judgement on the question of reasonableness.

As for plaintiffs' claim that the statute is unconstitutionally vague in that it does not define a "justified" termination, defendants respond that plaintiffs must meet a very difficult standard in this regard. Defendants argue that commercial statutes receive a more lenient standard on the vagueness issue than criminal statutes. They argue that to be unconstitutional for vagueness, a statute must be substantially incomprehensible. Defendant Department of Commerce states that as the agency responsible for enforcement, its interpretation of the statute is entitled to special deference by the court. The department then states that based on the plain language of the statute, the statute was intended to establish a non-binding alternative dispute resolution process without imposing any new substantive requirements on an insurer's right to terminate an agent. The legal standards for determining whether a termination is justified are the same standards that would be applied if the dispute arose in the district court. If the termination violates contract law, or other statutory or common law, it is unjustified. Defendants argue that the meaning of "unjustified" under the statute is consistent with the dictionary meaning, "without sufficient legal reason."

### III.

■ Plaintiffs' first argument is that application of the statute to the present case would constitute an unauthorized retroactive application of the law. Plaintiffs cite this court's decision in *McDonnell v. Farmers Ins. Exchange*, No. 4–82–576 (D.Minn.1983), in support of their conclusion that the statute is being retroactively applied. In *McDonnell* the court stated:

> Minnesota law defines retroactivity in terms of the effect a law has on vested contractual rights, not in terms of the time when a party asserts those rights.

*Id.* at 8 (citing *Cooper v. Watson*, 290 Minn. 362, 187 N.W.2d 689 (1971)).

*McDonnell* involved the issue of whether a termination fell under the Minnesota Franchise Act. This court held that the termination did not fall under the act be-

cause to do so would constitute an unauthorized retroactive application of the statute. The case involved a termination under a contract that allowed terminations without cause. The Minnesota Franchise Act prohibited terminations without cause. The statute was enacted after the parties entered into the agreement. This court denied McDonnell's request to apply the terms of the statute to the pre-existing agreement, because to do so would eliminate the defendant's vested right under the contract to terminate without cause. Plaintiff in the present case argues that this same reasoning compels the conclusion that the application of Minn.Stat. § 60A.177 would also be retroactive.

*McDonnell* is distinguishable from the present case in a very important respect. The statute in *McDonnell* added a new substantive term to the termination right specified in the contract. It added a requirement that the termination be with cause. In other words, the statute in *McDonnell* overrode the terms of the agreement. In the present case, plaintiffs' retroactivity argument is premature insofar that it is based on an assumption that the terms of the agreement will be overridden by the statute. There is no evidence to support this assumption. The Commissioner of Commerce has stated that the statute will be construed consistently with the terms of the agreement. He states that § 60A.177 does not add any substantive terms to parties' right to terminate under the contract.

There are no cases interpreting the meaning of a "justified" termination under § 60A.177. The court therefore gives close consideration to the interpretation of the enforcing agency, here the Department of Commerce. Under that interpretation, Minn.Stat. § 60A.177 is simply a non-binding dispute resolution mechanism. The statute does not postpone or extend the time in which the parties may exercise their contractual rights to terminate the agreement. The termination hearing must be scheduled by the Commissioner within 30 days of the request unless otherwise agreed upon by the parties. Minn.Stat. 60A.177(2). The procedure is therefore not

so time consuming as to work an infringement of the contractual termination rights. Apparently, only two hearings have been requested under § 60A.177. No evidence exists at this time to suggest any real delay in the process. Based on the above, no vested contractual rights are affected by Minn.Stat. § 60A.177 and application of the statute is not retroactive when applied to the termination of an agency contract that predates the statute, where the termination itself occurred *after* the effective date of the statute. This conclusion is consistent with this court's decision in *McDonnell* and recent Minnesota state law. *See Midwest Family Mutual Insurance Co. v. Bleick*, 486 N.W.2d 435 (Minn.Ct.App.1992), *pet. for review granted, in part, on other grounds and remanded, pet. for review denied* (Minn. July 23, 1992). (The fact that a claim related to a pre-existing insurance contract did not make the application of the statute retroactive where the claim arose after the effective date of the statute).[3]

Plaintiffs' reliance on the decision in *Totten v. Farmers Insurance Exchange*, No. 3–88–337 (D.Minn.1989), is similarly misplaced. In that case, substantial impairment of contract was found where the statute added substantive requirements before a party could enforce its contractual termination rights. Under Minn.Stat. § 60A.171, the insurer must go through a year-long rehabilitation process with its agent before termination is allowed. Even then, the insurer can only terminate if the agent has failed to rehabilitate. *Id* at 21. The statute in this case, Minn.Stat. § 60A.177, does not add any such substantive requirements and consequently the reasoning in *Totten* does not apply here.

■ The test for determining plaintiffs' substantial impairment of contract claim is found in *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459

U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). *See also Christensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740, 750–51 (Minn.1983) (adopting the *Energy Reserves* test in Minnesota). There the United States Supreme Court stated that the threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411, 103 S.Ct. at 704. The greater the severity of impairment, the greater the scrutiny to which the statute should be subjected. *Id* at 411, 103 S.Ct. at 704. One factor in examining the level of impairment is whether the industry of the complaining party has been regulated in the past. This is important because "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Id* at 411, 103 S.Ct. at 704 (quoting *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908)).

■ If the threshold inquiry of substantial impairment is met, the state must have a significant and legitimate public purpose behind the regulation "such as the remedying of a broad and general social or economic problem." *Id.* 459 U.S. at 412, 103 S.Ct. at 704 (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247, 249, 98 S.Ct. 2716, 2723, 2724, 57 L.Ed.2d 727 (1978)). This public purpose, however, does not have to be an emergency or temporary situation. *Id.* 459 U.S. at 412, 103 S.Ct. at 705. Once the court identifies a legitimate public purpose, the final inquiry is whether the adjustment of party rights is narrowly tailored to the public purpose behind the legislation. *Id.* at 412, 103 S.Ct. at 705. When reviewing economic and social regulation, "courts properly defer to the legislative judgement as to the necessi-

---

**3.** The court is not persuaded by the contrary result in the unpublished decision *Lindsay v. American Family*, Civ. No. CF–92–1440 (Ramsey County District Court, August 20, 1992). In that case, the court did not have the benefit of intervention by the State Commissioner of Commerce. It appears as well, that the court was not made aware of *Midwest Family v. Bleick*,

486 N.W.2d 435 (Minn.App.1992) *pet. for review granted, in part, on other grounds and remanded, pet. for review denied* (Minn. July 23, 1992), decided just a few months earlier. Finally, the *Lindsay* court's reliance on this court's decision in *McDonnell* was misplaced for the reasons previously discussed in this opinion.

ty and reasonableness of a particular measure." *Id.* at 413, 103 S.Ct. at 705 (quoting *United States Trust Co. v. New Jersey,* 431 U.S. 1, 22–23, 97 S.Ct. 1505, 1517–1518, 52 L.Ed.2d 92 (1977)).

In the present case, there is no substantial impairment in light of the enforcing agency's interpretation of the statute and the history of regulation in the insurance industry. Plaintiffs' termination rights are not substantially impaired by the board of review mechanism because § 60A.177 does not add any substantive requirements for proper termination. Additionally, regulation of agent terminations exists in many states and, as nationwide operators, plaintiffs could have reasonably anticipated such regulation in Minnesota.

To the extent that there is impairment, that impairment is justified by the statute's purpose of providing an informal resolution method to help settle termination disputes between insurers and their agents. Such informal resolution lessens the burden on the courts and benefits consumers by reducing the chance that they will get caught in between insurer/agent disputes. In evaluating the reasonableness and appropriateness of the statute, the judgement of the legislature must be respected. *Energy Reserves,* 459 U.S. at 413, 103 S.Ct. at 705. Plaintiffs' claim for substantial impairment of contract does not meet the *Energy Reserves* standard and should be denied.

Finally, plaintiffs' claim that Minn.Stat. § 60A.177 is unconstitutionally vague is also without merit. State statutes are presumed constitutional. *Fitz v. Dolyak,* 712 F.2d 330, 333 (8th Cir.1983), *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980). Plaintiffs bear a heavy burden when seeking to have a statute declared void for vagueness. Plaintiffs must show that "the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Commercial statutes are judged under a more lenient standard than criminal statutes. *Id.* at 498, 102 S.Ct. at 1193. This is particularly true of regulated industries where because of the ongoing relationship between the industry and the state "elucidation of seemingly vague provisions will necessarily result, thereby obviating the need for judicial intervention." *Insurer's Action Council v. Heaton,* 423 F.Supp. 921, 925 (D.Minn.1976). In addition, when evaluating a facial challenge to a state law, a federal court should consider any limiting construction that a state court or enforcing agency has proffered. *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972).

In the present case, plaintiffs claim Minn.Stat. § 60A.177 is unconstitutionally vague because it does not clarify what is meant by a "justified" termination. The State Commerce Department's interpretation of the statute, as strictly a dispute resolution mechanism, eliminates the notion that § 60A.177 adds substantive prerequisites to a party's right to exercise contractual termination rights. In light of the Commerce Department's interpretation of the statute, and the plain meaning of its words, the statute is not "impermissibly vague in all its applications" and therefore is not void for vagueness. *Village of Hoffman,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982).

For the reasons stated above, Minn.Stat. § 60A.177 is not being retroactively applied in this case. The statute does not alter vested contractual rights under the Commissioner's interpretation of the statute as a method of alternative dispute resolution. Furthermore, there is no indication that the statute constitutes an unconstitutional impairment of contract. Plaintiffs' retroactivity and contact impairment arguments are premature because they assume the terms of the agreement will be overridden by the statute. At the present time, no evidence exists to support this assumption. Accordingly, Minn.Stat. § 60A.177 is constitutional as applied in this case.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that plain-

tiffs' motion for summary judgement is denied.