John A. DAVIS, Respondent,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellant.

No. C6-94-725.

Court of Appeals of Minnesota.

Sept. 6, 1994.

Richard P. Mahoney, Victor E. Lund, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, for appellant.

Timothy T. Sempf, Novitzke & Gust, Amery, WI, for respondent.

Considered and decided by LANSING, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant American Family Mutual Insurance Company challenges the trial court's finding that it is liable for the full amount of underinsured motorist coverage available under the automobile policy of respondent John A. Davis's father. Respondent filed a notice of review, claiming that the trial court should have applied Wisconsin law, thus permitting stacking of respondent's two automobile policies. Because we conclude that Minn.Stat. § 65B.49, subd. 4a applies where an injured passenger has not collected underinsured motorist benefits first from the car owner or driver's policy, and because we conclude that throughout the trial Davis sought underinsured motorist benefits under only one policy, we affirm.

## FACTS

Respondent John A. Davis, a Wisconsin resident, was injured in Minnesota on October 8, 1989, when the Porsche in which he was a passenger went out of control and struck a cyclone fence and a building. Robert Gountanis, a Minnesota resident, owned the Porsche, and his son, James R. Gountanis (Gountanis), also a Minnesota resident, was driving the car at the time of the accident.

State Farm Insurance insured the Gountanis vehicle with liability and uninsured motorist (UM) limits of $100,000 per person and $300,000 per accident. A letter in the record indicates that Gountanis also had underinsured motorist (UIM) coverage at the time of the accident. Gountanis's policy, however, excludes from the definition of "underinsured motor vehicle" a vehicle "insured under the liability coverage of the policy." Davis thus did not qualify as an insured under Gountanis's UIM policy, and he filed a claim against that policy's liability coverage instead, receiving $77,500 in settlement from State Farm.

Because Davis's damages exceeded the amount of the settlement, he sought UIM coverage under an automobile insurance policy issued to his father by American Family Insurance Company (American Family). That policy provided benefits up to $100,000 per person and $300,000 per accident.

American Family, in moving for summary judgment, argued that under Minn.Stat. § 65B.49, subds. 3a(5) and 4a, Davis had no excess UIM coverage. The district court denied American Family's motion and granted Davis's subsequent motion for summary judgment which sought a declaration that

UIM coverage was available to Davis under the American Family policy.

After trial on the merits, a jury found Gountanis causally negligent in operating the Porsche. The jury further determined that Davis's damages totaled $378,828.96.

Following the trial, American Family moved for judgment notwithstanding the verdict, again arguing that Davis had no excess UIM coverage under Minn.Stat. § 65B.49, subd. 3a(5). In the alternative, American Family sought judgment for Davis in the amount of $22,500, representing the difference between its UIM limits and the amount Davis received from Gountanis's insurer. The trial court denied American Family's motions, concluding that Davis was entitled to an award of $100,000, the limit of his UIM coverage under the American Family policy.

Davis also sought posttrial relief, claiming that application of Wisconsin law would entitle him to an award of $200,000, representing the total limit of UIM coverage on two separate automobile insurance policies held by his father. The trial court denied Davis's motion, finding that he never claimed coverage under two policies. The trial court also held that Minnesota's choice-of-law principles called for application of Minnesota law, which prohibits stacking insurance benefits unless the parties contract for stacking.

### ISSUES

1. Did the trial court err in applying Minn.Stat. § 65B.49, subd. 4a to award Davis the full amount of UIM benefits under his father's policy?

2. Did the trial court calculate improperly the amount of excess UIM benefits available to Davis?

3. Must the trial court apply Wisconsin law to the issue of stacking Davis's father's two automobile policies, thus permitting Davis to recover benefits from both policies?

### ANALYSIS

■ Two of the issues on appeal involve statutory interpretation, a question of law which this court reviews de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### I.

American Family argues that because the UIM limits on the Davis policy do not exceed liability limits of the Gountanis policy, the language of Minn.Stat. § 65B.49, subd. 3a(5) (Supp.1989) prohibits Davis from collecting any UIM benefits from his own policy. Davis contends, and the trial court agreed, that under Minn.Stat. § 65B.49, subd. 4a (Supp.1989) he is entitled to the full amount of American Family's UIM coverage because he sustained but did not recover the full amount of his damages from Gountanis's liability policy. At first blush, there is an apparent conflict between subdivisions 3a(5) and 4a. We conclude, however, that these statutes can be interpreted in such a manner as to harmonize them. Minn.Stat. § 65B.49, subd. 3a(5) states:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

Subdivision 4a of Minn.Stat. § 65B.49 states:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle.

■ Subdivision 3a(5) codifies the order of priority of UM and UIM coverage and requires an injured party who was a passenger

in a vehicle owned by another to look first to the UIM coverage afforded by the vehicle driver's or owner's policy. *Thommen v. Illinois Farmers Ins. Co.,* 437 N.W.2d 651, 653 (Minn.1989). Then, if the injured party sustains damages exceeding the limits of the vehicle driver's or owner's UIM coverage, he or she may recover "excess insurance protection afforded by a policy in which the injured party is otherwise insured." Minn.Stat. § 65B.49, subd. 3a(5).

Prior to 1989, subdivision 4a provided difference-of-limits coverage, a provision which would have supported the argument American Family now makes. In 1989, however, the legislature amended subdivision 4a, rejecting the difference-of-limits approach. 1 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* 208 (2d ed. 1989).

> The 1989 amendment now makes underinsured motorist insurance coverage available to cover the *damages sustained but not recovered.* This is the add-on approach that was taken in the underinsured motorist insurance provision prior to the 1980 repeal of that provision.

*Id.* (emphasis in original).

We begin the process of harmonizing subdivisions 3a(5) and 4a by recognizing the continued viability of the decision in *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288 (Minn.1983), regarding the function of UM and UIM coverage. In *Myers* the court determined that an injured person may not recover both liability and UIM benefits under the same policy and reasoned that:

> Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. * * * To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.

*Id.* at 291. In contrast, liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. * * * An insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage; allowing underinsured coverage [where the injured person attempts to recover both liability and UIM under the same policy] would, in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage.

*Meyer v. Illinois Farmers Ins. Group,* 371 N.W.2d 535, 537 (Minn.1985). *See also Thommen,* 437 N.W.2d at 654 (to hold the insurer liable to pay damages resulting from the negligent use of the insured motor vehicle pursuant to both the liability coverage and the UIM coverage is to convert the first-party UIM coverage into third-party insurance, "treating it essentially the same as third-party liability coverage") (quoting *Myers,* 336 N.W.2d at 291).

*Myers* would preclude Davis from seeking UIM coverage under the Gountanis policy, because he had already received the benefit of that policy's liability coverage. Because UIM was not available to Davis under the Gountanis policy, the following language in subdivision 3a(5) becomes irrelevant:

> [T]he injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is * * * available only to the extent by which the limit of liability for *like coverage* [on the policy of which the injured person is an insured] exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

(Emphasis added.) There is no "excess" coverage under subdivision 3a(5) in this case

because there is no coverage available to Davis under the Gountanis policy that is "like" the coverage Davis seeks from American Family.

■ A reasonable reading of subdivision 3a(5) leads us to conclude that that section should be invoked against an injured person only when that person seeks UIM benefits under his or her own policy after already qualifying for UIM benefits from another source.

■ What then of subdivision 4a? We find it applicable under the facts of this case. The 1989 amendment to subdivision 4a mandates that UIM is "add-on" coverage, available to compensate an injured person for "damages sustained but not recovered." Steenson at 208. Davis has not been fully compensated by the settlement under the Gountanis's liability coverage and has no other source to look to for UIM benefits. The UIM benefits under the American Family policy are available to him in the sum of $100,000.

We believe our decision is fully consistent with *Midwest Family Mut. Ins. Co. v. Bleick,* 486 N.W.2d 435, 437 (Minn.App.1992), *pet. for rev. denied in part, granted in part and remanded* (Minn. July 27, 1992). In *Bleick,* two cars collided, injuring Bleick and resulting in his death a few weeks after the accident. Bleick was driving one of the cars, and his heirs received $30,000 liability benefits from the driver of the other car. When the heirs then sought benefits under Bleick's UIM limits of $100,000, the insurance company (applying the difference-of-limits approach set forth in pre–1989 subdivision 4a) paid $70,000. *Id.* at 437. The heirs, however, demanded an additional $30,000 in UIM coverage based on the 1989 amendment of subdivision 4a, which took effect during Bleick's policy period. *Id.*

This court held that the amended subdivision 4a applied, requiring the insurer to provide $100,000 add-on coverage, despite difference-of-limits calculation in effect when

it issued the policy. *Id.* at 438. In doing so, we also held that the amendment did not unconstitutionally impair the obligations of contracts, and that in order to compensate for any additional UIM exposure created by the statute, insurers could adjust premiums. *Id.* at 440. The Minnesota Supreme Court remanded the case for the narrow purpose of modifying this court's decision to allow remand to the trial court with instructions to offset judgment in favor of the insured by an amount representing the premium to which the insurer would be entitled for providing coverage imposed by subdivision 4a. *Midwest Family Mut. Ins. Co. v. Bleick,* No. C9–91–1921, 1992 WL 204687 (Minn. July 27, 1992). Notably, however, the supreme court did not reverse this court's conclusion that add-on coverage applies.

The cases American Family cites are distinguishable. Also, these cases illustrate the importance of exercising caution in applying broad principles of law under chapter 65B. Often the facts of individual cases compel narrowly circumscribed statements of applicable law.[1] In *Dilworth v. Dairyland Ins. Co.,* No. C8–91–1683, 1992 WL 83294 (Minn. App. Apr. 28, 1992), claims for UM benefits were made both against the policy covering the vehicle the injured party occupied and from his personal policy. This court affirmed denial of excess benefits under subdivision 3a(5) because Dilworth's UM limits did not exceed the (like) coverage limit of the policy covering the vehicle involved in the accident. *Dilworth* clearly requires application of subdivision 3a(5) because the injured person sought the same kind of benefits from both policies; Dilworth's personal policy would have been a source of excess UM benefits if his coverage limits had exceeded those of the policy from which he recovered UM benefits.

Similarly, in *LaFave v. State Farm Mut. Auto. Ins. Co.,* 510 N.W.2d 16 (Minn.App. 1993), this court applied subdivision 3a(5) and denied LaFave excess uninsured motorist

1. For example, the facts of this case (a one vehicle accident with recovery under that vehicle's liability coverage and a subsequent request for payment under the injured party's UIM coverage), must be distinguished from cases which

although requiring, as here, consideration of subdivisions 3a(5) and 4a, involve different facts (for instance: more than one vehicle, more than one claim for "like" coverage, more than one injured person).

coverage under her own policy. As in *Dilworth,* LaFave claimed UM benefits both from the policy covering the vehicle involved in the accident and from her own policy, thus seeking "like coverage" on her personal policy. Because her own UM policy limit did not exceed those covering the involved vehicle, however, she was not entitled to excess coverage. *Id.* at 19.[2]

## II.

American Family argues that if this court applies subdivision 4a, then it should find that the trial court erred in calculating the amount of excess UIM protection available to Davis. Subdivision 4a permits the injured party to recover "the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle." Minn.Stat. § 65B.49, subd. 4a. In view of our conclusion that Davis is entitled to add-on benefits pursuant to Minn.Stat. § 65B.49, subd. 4a, there is no merit in American Family's contention that this provision means that Davis can recover only the amount not recovered from Gountanis's insurance policy, or $22,500. The plain language of the statute entitles Davis to the entire amount of his UIM coverage if his damages warrant.

## III.

 Davis, through his notice of review, claims that the trial court should have applied Wisconsin law to permit him to stack coverage from two automobile policies. Minnesota law does not permit stacking UM or UIM benefits unless the parties contract for that right. Minn.Stat. § 65B.49, subd. 3a(6) (1992); *see Austin Mut. Ins. Co. v. Templin,* 435 N.W.2d 584, 587 (Minn.App. 1989) (Minnesota law prohibiting court-imposed stacking of underinsured motorist coverage permits stacking pursuant to contractual language of policy), *pet. for rev. denied* (Minn. Apr. 24, 1989).

Davis maintained throughout the trial that he was entitled to benefits under only one policy. The policy Davis now seeks to "stack" was never made a part of the lawsuit. He never amended his pleadings to include a claim under that policy, and the issue was not litigated by consent. He, in fact, identified two policies only in a posttrial motion. We conclude, as did the trial court, that Davis should be held to his claim of only one policy. *See Allen v. Central Motors,* 204 Minn. 295, 298–99, 283 N.W. 490, 492 (1939) (issues that were neither pleaded nor litigated by consent cannot be raised for the first time in posttrial motions). We therefore do not reach the choice-of-law issue. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (issues not raised or argued to the trial court cannot be decided for the first time on appeal).

## DECISION

The trial court did not err in applying Minn.Stat. § 65B.49, subd. 4a to permit Davis to receive the total amount available under American Family's UIM coverage. The trial court also did not err in allowing Davis to make a UIM claim under only one policy.

**Affirmed.**

---

**2.** We are aware of a recent unpublished decision from a divided panel of this court which on similar facts reaches a result contrary to the one we reach today. *See Petree v. American Standard Ins. Co. of Wis.,* No. C0–94–8, 1994 WL 273426 (Minn.App. June 21, 1994) (holding that injured parties who collected liability benefits from the policies of the involved vehicles could not recover UIM benefits from their mother's automobile policy). Because unpublished decisions are not precedential, Minn.Stat. § 480A.08, subd. 3 (1992), we limit that case to its facts.